# Exhibit A

KENTUCKY COURT OF JUSTICE

**25-CI-01246**

# FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A

**CAMPBELL CIRCUIT COURT**

Filed on **12/05/2025** as **CONTRACT - OTHER** with **HON. DANIEL J. ZALLA**

****** NOT AN OFFICIAL COURT RECORD ******

## Case Memo — 25-CI-01246

*CONTRACT-OTHER*

## Parties — 25-CI-01246

**BANKUNITED NA** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists. Alternative Service Address exists.

**Address**

7825 NW 148TH ST
HIALEAH FL 33016

**Summons**

**CIVIL SUMMONS** issued on **12/10/2025** served / recalled on **12/19/2025** by way of **LONG ARM STATUTE - SOS**

*MEMO FROM Service, :Delivered, Individual Picked Up at Postal FacilitySuccessful*

**CIVIL SUMMONS** issued on **12/10/2025** served / recalled on **12/19/2025** by way of **LONG ARM STATUTE - SOS**

*MEMO FROM Service, :Delivered, Individual Picked Up at Postal FacilitySuccessful*

**CIVIL SUMMONS** issued on **12/10/2025** served / recalled on **12/19/2025** by way of **LONG ARM STATUTE - SOS - RESTRICTED DELIVERY**

*MEMO FROM Service, :Delivered, Individual Picked Up at Postal FacilitySuccessful*

**CIVIL SUMMONS** issued on **12/05/2025** by way of **CERTIFIED MAIL**

*9236090194038345832609*

**CIVIL SUMMONS** issued on **12/05/2025** by way of **CERTIFIED MAIL**

*9236090194038345832623*

**FIRST AMERICAN TITLE INSURANCE COMPANY** as **PLAINTIFF / PETITIONER**

**Address**

1 FIRST AMERICAN WAY
SANTA ANA CA 92707

**REGIONS BANK** as **DEFENDANT / RESPONDENT**

**Memo**

Registered Agent of Service exists.

**Address**

1900 FIFTH AVENUE NORTH
BIRMINGHAM AL 35203

**Summons**

**CIVIL SUMMONS** issued on **12/05/2025** served / recalled on **12/17/2025** by way of **CERTIFIED MAIL**

*9236090194038345832586Successful*

**CIVIL SUMMONS** issued on **12/05/2025** served / recalled on **12/23/2025** by way of **CERTIFIED MAIL**

*9236090194038345832616Successful*

**ARGO, SUSAN MOELLER** as **ATTORNEY FOR DEFENDANT**

**Address**

BRICKER GRAYDON LLP
312 WALNUT STREET, SUITE 1800
CINCINNATI OH 45202

**BAURICHTER, AUSTIN** as **ATTORNEY FOR DEFENDANT**

**Address**

BRICKER GRAYDON LLP
312 WALNUT STREET, SUITE 1800
CINCINNATI OH 45202

**COLVIN, CHARLES R** as **ATTORNEY FOR PLAINTIFF**

**Address**

STRAUSS TROY CO., LPA
50 E. RIVERCENTER BLVD., SUITE 200
COVINGTON KY 41011

**BANK UNITED NA** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BANKUNITED NA

**Address**

LEGAL DEPARTMENT
7825 NW 148TH ST
MIAMI LAKES FL 33016

**BANKUNITED NA** as **ALTERNATIVE SERVICE ADDRESS**

**Address**

ATTN: RAJINDER P. SINGH, CEO
14817 OAK LANE
MIAMI LAKES FL 33106

**Summons**

**CIVIL SUMMONS** issued on **12/10/2025** served / recalled on **12/19/2025** by way of **LONG ARM STATUTE - SOS - RESTRICTED DELIVERY**

*MEMO FROM Service, :Delivered, Individual Picked Up at Postal FacilitySuccessful*

**BANKUNITED NA** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is BANKUNITED NA

**Address**

14817 OAK LANE
MIAMI LAKES FL 33106

**Summons**

**CIVIL SUMMONS** issued on **12/10/2025** served / recalled on **12/20/2025** by way of **LONG ARM STATUTE - SOS**

*MEMO FROM Service, :Delivered to Agent, Picked up at USPSSuccessfu l*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is REGIONS BANK

**Address**

315 HIGH STREET
FRANKFORT KY 40601

**Summons**

**CIVIL SUMMONS** issued on **12/10/2025** served / recalled on **12/15/2025** by way of **CERTIFIED MAIL**

*9236090194038346549216Successful*

**CORPORATION SERVICE COMPANY** as **REGISTERED AGENT OF SERVICE**

**Memo**

Related party is REGIONS BANK

**Address**

421 WEST MAIN STREET

FRANKFORT KY 40601

| **Documents** | **25-CI-01246** |
|---|---|
| **COMPLAINT / PETITION** filed on **12/05/2025** | |
| **EXHIBIT** filed on **12/05/2025** | |
| **EXHIBIT** filed on **12/05/2025** | |
| **EXHIBIT** filed on **12/05/2025** | |
| **EXHIBIT** filed on **12/05/2025** | |
| **MISCELLANEOUS** filed on **12/30/2025**<br>*STIPULATED EXTENSION OF TIME TO ANSWER OR OTHERWIS* | |
| **NOTICE - OTHER** filed on **12/30/2025**<br>*NOTICE OF APPEARANCE OF COUNSEL* | |
| **NOTICE - OTHER** filed on **12/30/2025**<br>*NOTICE OF ELECTION OF ELECTRONIC SERVICE* | |
| **NOTICE - OTHER** filed on **12/30/2025**<br>*NOTICE OF APPEARANCE OF CO-COUNSEL* | |
| **NOTICE - OTHER** filed on **12/30/2025**<br>*NOTICE OF ELECTION OF ELECTRONIC SERVICE* | |

| **Images** | **25-CI-01246** |
|---|---|
| **COMPLAINT / PETITION** filed on **12/05/2025** *Page(s): 15* | |
| **EXHIBIT** filed on **12/05/2025** *Page(s): 3* | |
| **EXHIBIT** filed on **12/05/2025** *Page(s): 19* | |
| **EXHIBIT** filed on **12/05/2025** *Page(s): 9* | |
| **EXHIBIT** filed on **12/05/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/05/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/05/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/05/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/05/2025** *Page(s): 1* | |
| **COURTESY FINANCIAL TRANSACTION REPORT** filed on **12/05/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/10/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/10/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/10/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/10/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/10/2025** *Page(s): 1* | |
| **SUMMONS** filed on **12/10/2025** *Page(s): 1* | |
| **COURTESY FINANCIAL TRANSACTION REPORT** filed on **12/10/2025** *Page(s): 1* | |
| **COURTESY FINANCIAL TRANSACTION REPORT** filed on **12/10/2025** *Page(s): 1* | |
| **COURTESY FINANCIAL TRANSACTION REPORT** filed on **12/10/2025** *Page(s): 1* | |
| **COURTESY FINANCIAL TRANSACTION REPORT** filed on **12/10/2025** *Page(s): 1* | |
| **SUMMONS - RETURN OF SERVICE** filed on **12/16/2025** *Page(s): 2* | |
| **SUMMONS - RETURN OF SERVICE** filed on **12/18/2025** *Page(s): 2* | |
| **SUMMONS - RETURN OF SERVICE** filed on **12/19/2025** *Page(s): 2* | |

| |
|---|
| **SUMMONS - RETURN OF SERVICE** filed on **12/19/2025** *Page(s): 2* |
| **SUMMONS - RETURN OF SERVICE** filed on **12/19/2025** *Page(s): 2* |
| **SUMMONS - RETURN OF SERVICE** filed on **12/19/2025** *Page(s): 2* |
| **SUMMONS - RETURN OF SERVICE** filed on **12/20/2025** *Page(s): 2* |
| **SUMMONS - RETURN OF SERVICE** filed on **12/24/2025** *Page(s): 2* |
| **MISCELLANEOUS** filed on **12/30/2025** *Page(s): 2* |
| **NOTICE - OTHER** filed on **12/30/2025** *Page(s): 2* |
| **NOTICE - OTHER** filed on **12/30/2025** *Page(s): 2* |
| **NOTICE - OTHER** filed on **12/30/2025** *Page(s): 2* |
| **NOTICE - OTHER** filed on **12/30/2025** *Page(s): 2* |

****** End of Case Number : 25-CI-01246 ******

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**DIVISION NO. ____**
**CASE NO. ______________**

**FIRST AMERICAN TITLE INSURANCE COMPANY** **PLAINTIFF**
1 First American Way
Santa Ana, CA 92707

**v.**

**REGIONS BANK** **DEFENDANTS**
1900 Fifth Avenue North
Birmingham, AL 35203

**Serve also:**
Corporation Service Company
421 West Main Street
Frankfort, KY 40601

**and**

**BANKUNITED NA**
7825 NW 148th St.
Miami Lakes, FL 33016-1554

**Serve:**
Legal Department
Attn: Alina Simona Pastiu, Esq.
7825 NW 148th St.
Miami Lakes, FL 33016-1554

## COMPLAINT

Plaintiff First American Title Insurance Company ("First American" or "Plaintiff"), through counsel, states as follows for its Complaint against Defendants Regions Bank ("Regions") and BankUnited NA ("BankUnited") (at times Regions and BankUnited may be referred to collectively as "Defendants" or individually as "Defendant"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff First American is a title insurance company operating and registered to do business in the Commonwealth of Kentucky.

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000001 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

2. Defendant Regions is an FDIC-insured bank operating and registered to do business in the Commonwealth of Kentucky, with a principal place of business located at 1900 Fifth Avenue North, Birmingham, AL 35203, and multiple physical business locations throughout the state of Kentucky.

3. Defendant BankUnited is a national banking association with a principal place of business located at 7825 NW 148th St., Miami Lakes, FL 33016-1554, and conducts business in the Commonwealth of Kentucky, and whose involvement herein arises from its participation in a transaction concerning the sale of real property located in Campbell County, Kentucky.

4. Jurisdiction and venue are proper in this Court and over Defendants because the amount in controversy exceeds the jurisdictional minimum, Defendants committed tortious acts causing harm in Kentucky, these claims arise out of Defendants' contacts with and involvement in a real estate transaction in Kentucky, and such tortious acts were further in connection with real property specifically located in Campbell County and resulting in a prior foreclosure action in this Court.

## FACTS

### The Legacy Settlement Services Transaction

5. On or about November 23, 2022, as part of a residential real estate closing conducted by Legacy Settlement Services, LLC ("Legacy"), it wired approximately $356,986.89 (the "Legacy Funds") from BankUnited to Regions, which were intended as the payoff for a mortgage lien held by a lender on the property that was the subject of the closing, and were wired by Legacy for that purpose.

6. As the result of the actions of a fraudulent third-party actor who misdirected the Legacy Funds to the actors' account instead of to the true lender's account, the

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000002 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

Legacy Funds were wired to a personal checking account at Regions in the name of "James R Ready" ending in digits ******8515 (the "Ready Account").

7. The Legacy Funds were wired from a BankUnited account.

8. Defendants' own documentation establishes Legacy's wiring of the Legacy Funds from BankUnited and their subsequent deposit into the Ready Account at Regions.

9. On information and belief, Legacy reported to BankUnited that it had fallen victim to fraud and that the funds should not have been wired to the Ready Account.

10. On information and belief, on or about December 21, 2022, BankUnited sent a fraud wire recall to Regions for the Legacy Funds.

11. On or about January 9, 2023, Regions opened a fraud investigation into the Ready Account, following notification from BankUnited that the $356,986.89 deposit of Legacy Funds into the Ready Account was fraudulent.

12. Regions' own internal investigation report shows that once the Ready Account received the wire of the Legacy Funds in the amount of $356,986.89, the fraudulent actor very shortly thereafter, on or about November 28 and 29, 2022, issued several cashier's checks from the Ready Account to various unknown persons associated with the fraudulent actor, which totaled approximately $349,550.00.

13. Regions' documentation of the Ready Account shows that the Ready Account had a balance less than $500.00 as of December 15, 2022.

**The American Homeland Title Agency Transaction**

14. Plaintiff incorporates all preceding allegations as if fully restated herein.

15. Unrelated to the Legacy transaction, on or about December 16, 2022, another real estate closing occurred involving funds transferred by BankUnited to Regions, this time through a settlement agent by the name of American Homeland Title

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000003 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

Agency ("Homeland").

16. The Homeland closing related to the sale of the real property known as 701 Brant Ct., Alexandria, KY 41001, in Campbell County (the "Property").

17. Both BankUnited and Regions were aware at all relevant times that this transaction involved the Property.

18. At the time of the Homeland transaction, Village Capital & Investment LLC ("Village Capital") held a note payable by the then-owners of the Property, James and Catherine Saunders (the "Note"), which Note was secured by a first mortgage on the Property, recorded in the Campbell County, Kentucky records at Book M1070, Page 93 (the "Mortgage"). A copy of the Note, redacted as applicable, is attached as Exhibit 1, and a copy of the Mortgage, redacted as applicable, is attached as Exhibit 2.

19. Kody and Samantha Jarrells bought the Property from James and Catherine Saunders in the Homeland transaction and financed it with a mortgage in favor of American Pacific Mortgage Corporation ("American Pacific").

20. First American insured the validity and priority of the American Pacific mortgage against the Property by underwriting a policy of title insurance issued to American Pacific.

21. As a part of the Homeland transaction and the Jarrells' purchase of the Property, at closing, the Village Capital Note was to be paid off and the Mortgage released.

22. The Homeland transaction settlement statement explicitly listed a $249,999.09 payoff balance payable to Village Capital in order to satisfy the Note and cause the Mortgage to be released.

23. On or about December 16, 2022, Homeland wired $249,999.09 which was

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000004 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

the amount necessary to satisfy the Village Capital Note/Mortgage balance (the "Homeland Funds").

24. However, just as had happened with the weeks-earlier, unrelated Legacy transaction, a fraudulent third-party actor provided fraudulent wire information to Homeland which in turn caused Homeland to wire the Homeland Funds to the Ready Account.

25. After BankUnited originated the wire for its client/customer, Homeland, in the transaction, the Homeland Funds were routed from BankUnited to the Ready Account at Regions.

26. As a result of this fraud, the Homeland Funds which were intended to pay off the Note and Mortgage held by Village Capital never made it to the intended recipient and, as a result, the Village Capital Mortgage remained on the Property.

27. Defendants are aware of and have documentation establishing Homeland's wiring of the Homeland Funds from BankUnited and their subsequent deposit in the Ready Account at Regions.

28. As a direct and immediate result of the Homeland Funds wire transfer, the Ready Account on December 16, 2022, immediately after the wiring of the Homeland Funds contained $250,470.78 (consisting of $486.69 Legacy Funds and $249,999.09 Homeland Funds).

29. The Ready Account had contained less than $500.00 prior to the Homeland Funds transfer into the account on December 16, 2022.

30. On December 16, 2022, essentially all Legacy Funds were no longer in the Ready Account.

31. Accordingly, as of December 16, 2022, essentially all funds contained in the

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000005 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

Ready Account were the very same identifiable, traceable Homeland Funds that had been wired by Homeland and earmarked as the Village Capital Note/Mortgage payoff.

**BankUnited's Homeland Funds Fraud Wire Recall**

32. Plaintiff incorporates all preceding allegations as if fully restated herein.

33. On or about January 4, 2023, internal Regions emails demonstrate its actual knowledge that there had been a business email compromise ("BEC") resulting in two large-dollar wires that it received, *i.e.*, the Legacy Funds and the Homeland Funds.

34. On or about January 11, 2023, BankUnited sent Regions a fraud wire recall for the Homeland Funds.

35. On or about January 12, 2023, Regions responded to BankUnited's fraud wire recall for the Homeland Funds and informed it that the Homeland Funds were on hold, and that Regions required an indemnity agreement in order to return them.

36. BankUnited had previously executed an indemnity agreement in favor of Regions at or around the time of the prior wire fraud recall for the Legacy Funds.

37. On information and belief, BankUnited never provided the indemnity agreement to Regions for the Homeland Funds and did not respond to the request.

**Defendants' Wiring of the Homeland Funds to Legacy**

38. As evidenced by Regions' internal fraud investigation, it had knowledge in January 2023, at the very latest, that as of November 30, 2022, substantially all of the Legacy Funds already had been drained from the Ready Account *prior to* the Homeland Funds' deposit in the Ready Account on or about December 16, 2022.

39. Regions' internal account documentation for the Ready Account confirms that, for the period of November 30, 2022, through January 13, 2023, the starting account balance for the Ready Account was less than $500.00, and the ending balance was more

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000006 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

than $250,000.00, with the sole deposit into the Ready Account during that period being the Homeland Funds wire transfer in the amount of $249,999.09.

40. The Homeland Funds thus represented substantially all the funds in the Ready Account as of January 13, 2023.

41. Both Regions and BankUnited had actual knowledge as of at least January 12, 2023, that the Homeland Funds had been sent to the Ready Account at Regions and were specifically being held and frozen there.

42. Regions knew as of at least January 12, 2023, that substantially all these funds then-contained in the Ready Account were the Homeland Funds.

43. The Homeland Funds held in the Ready Account were directly traceable, identifiable, and expressly earmarked to payoff off the Note and Mortgage with Village Capital.

44. Nonetheless, on February 8, 2023, Regions wire-transferred just over $250,000.00 then-contained in the Ready Account—namely, the entire $249,999.09 in earmarked Homeland Funds—to BankUnited with the comment that it was returning all available funds from the original amount of the Legacy Funds.

45. These returned funds were the identifiable Homeland Funds, and not the Legacy Funds, as Regions definitively knew.

46. Further, at the time that the funds were returned by Regions to BankUnited, BankUnited also knew of the existence of the fraud relating to the Homeland Funds.

47. BankUnited subsequently returned the Homeland Funds to Legacy, rather than to Homeland, despite BankUnited's knowledge that both Homeland and Legacy (its clients/customers) had been victims of the same scheme.

48. This knowledge was evidenced by the fact that BankUnited had voluntarily

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000007 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

undertaken to initiate fraud wire recalls and attempt to recover the stolen money on both Homeland's and Legacy's behalf.

49. BankUnited was further aware that Regions had specifically frozen the entire amount of the Homeland Funds and was holding them in response to the wire recall.

50. BankUnited was aware that the returned amount on February 8 essentially matched the amount of the frozen Homeland Funds.

51. BankUnited did not follow up on the status of the Homeland Funds' freeze after being advised that Regions was holding the funds.

52. BankUnited did not provide the requested indemnity agreement to Regions despite doing so for Legacy.

53. On or about February 10, 2023, Regions informed BankUnited that there were no funds remaining to return in response to the second fraud wire recall from BankUnited (for the Homeland Funds), and thus it was unable to comply with that request.

54. Neither BankUnited nor Regions ever informed Homeland, or anyone involved in the transaction concerning the Property, about the identification of the Homeland Funds that had been routed to Regions from BankUnited, that they had been identified, frozen, and held there, that the Homeland Funds were subsequently returned to Legacy instead, or that Regions and BankUnited both knew that the Homeland Funds never reached Village Capital to payoff the Note/Mortgage as intended and as explicitly stated in the BankUnited wire instructions to Regions on December 16, 2022.

55. BankUnited returned the Homeland Funds to Legacy instead of returning said funds to Homeland.

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000008 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

## The Foreclosure Litigation

56. Plaintiff incorporates all preceding allegations as if fully restated herein.

57. When the Note and Mortgage went unpaid, Village Capital initiated a foreclosure action related to the Property styled as *Village Capital & Investment LLC v. James D. Saunders, et al.*, Campbell Circuit Court, Division I, No. 23-CI-00306 (the "Foreclosure Litigation").

58. Homeland ultimately became a third-party defendant in the Foreclosure Litigation.

59. During the pendency of the Foreclosure Litigation, Village Capital assigned its rights with respect to the Property, including all rights to collect upon the Mortgage-secured Note, to Planet Home Lending, LLC ("Planet"), who was subsequently substituted as the plaintiff in the Foreclosure Litigation.

60. In or about April 2025, the parties to the Foreclosure Litigation settled and dismissed that case, with First American ultimately paying $276,460.80 to Planet on its Note/Mortgage in order to preserve the first priority lien position of the First-American-insured American Pacific mortgage on the Property.

61. First American bore and compensated for the harm and liability exposure otherwise borne by the defendants and third-party defendants in the Foreclosure Litigation, including Homeland.

62. In addition, First American through its policy is subrogated to the rights and interests associated with the Note/Mortgage via its insured.

63. A true and accurate copy of the insurance policy under which First American insured the American Pacific mortgage and obtained these rights is attached here as <u>Exhibit 3</u>.

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000009 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

64. A true and accurate copy of the payment made by First American, pursuant to this policy and in satisfaction of the Foreclosure Litigation liability, is attached (redacted as appropriate) as <u>Exhibit 4</u>.

65. In total, in resolving the Foreclosure Litigation First American has suffered damages exceeding $400,000, which include legal fees and costs as well as the payoff to Planet.

66. But for the Defendants' conduct resulting in the loss of the Homeland Funds (by providing them to Legacy) First American would not have suffered such damages.

**<u>FIRST AND SECOND CLAIMS FOR RELIEF</u>**
**Negligent Recovery and Negligence**
**(Against BankUnited)**

67. Plaintiff incorporates all preceding allegations as if fully restated herein.

68. BankUnited owed a general duty of at least ordinary care to its client/customer, Homeland, who was using BankUnited for purposes of the Homeland Transaction to wire the Village Capital Note/Mortgage payoff related to the Property.

69. BankUnited knew of the existence of this duty.

70. In addition, BankUnited owed a duty of at least ordinary care to Homeland by virtue of its fraud wire recall for the Homeland Funds and the voluntary efforts BankUnited undertook to recover them for Homeland.

71. Under Kentucky law, a party is required to exercise at least ordinary, reasonable care in carrying out voluntarily undertaken efforts on behalf of another, here, BankUnited's client/customer Homeland.

72. BankUnited knew of the existence of this duty.

73. BankUnited actually recovered the Homeland Funds.

74. BankUnited negligently breached its duty of ordinary care to Homeland (one

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000010 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

client/customer) by providing the Homeland Funds, which BankUnited had in its possession, to Legacy (another client/customer) rather than Homeland.

75. BankUnited knew or should have known that these were the Homeland Funds and not the Legacy Funds at the time BankUnited provided them to Legacy rather than Homeland.

76. BankUnited negligently breached this voluntarily undertaken duty.

77. Further, BankUnited, also breached its duty to Homeland as client/customer, by failing to follow-up or respond to Regions' alert that it actually had the Homeland Funds held and frozen, by failing to provide the requested indemnity (despite doing so for Legacy) or attempting to obtain the Homeland Funds that it knew Regions had frozen, and by not further inquiring into Regions' inaccurate comment that it was returning the remainder of the Legacy Funds despite all of the known facts at the time indicating otherwise.

78. In addition, BankUnited owed a duty of at least ordinary care to the participants of the Homeland Transaction in which BankUnited was involved as the wire-originating bank, as it was foreseeable that such participants, including American Pacific and First American as its insurer, could be harmed by BankUnited's negligence in its failure to properly assist in the recovery and return of the Homeland Funds.

79. It was reasonably foreseeable from BankUnited's perspective that the Homeland Transaction purchaser's mortgagee would be harmed where the seller's prior mortgage goes unpaid or is otherwise affected by BankUnited's misconduct in the transaction and in its failure to properly return the Homeland Funds.

80. BankUnited negligently breached this duty to Homeland as well as all Homeland Transaction participants, including the Plaintiff, by its above-described actions

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000011 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

and, further, through its actions materially increased the risk and harm to Homeland and to all participants in the Homeland Transaction by failing to inform anyone in that transaction about these events, and allowing everyone to learn about them through the Foreclosure Litigation.

81. Plaintiff, American Pacific, Homeland, and others in the Foreclosure Litigation did not learn of these events or have opportunity to discover them until the Foreclosure Litigation was filed and the interested parties obtained through that action and legal process a subpoena response from Regions containing internal communications and wire records.

82. BankUnited has breached the aforementioned duties by virtue of the described negligent actions, including but not limited to the negligent return of the Homeland Funds to Legacy.

83. As a direct and proximate result of the above-described negligence and negligent recovery efforts of BankUnited, First American has directly suffered injury and damages in excess of the jurisdictional minimum, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Negligent Recovery**
**(Against Regions)**

84. Plaintiff incorporates all preceding allegations as if fully restated herein.

85. After BankUnited's fraud wire recall for the Homeland Funds, Regions also voluntarily undertook efforts to recover the Homeland Funds on Homeland's behalf, creating a duty to exercise at least ordinary care by Regions in those efforts.

86. In addition to its duty to Homeland, Regions owed a duty of at least ordinary care to the participants of the Homeland Transaction, including American Pacific and First American as its insurer, after it became aware of the BEC and the fact that it was in

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000012 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

possession of the Homeland Funds which had been diverted to its bank by a fraudulent actor.

87. It was foreseeable that such participants, including American Pacific and First American as its insurer, could be harmed by Region's negligence in its failure to properly assist in the recovery and proper return of the Homeland Funds.

88. Regions negligently breached this voluntarily undertaken duty of ordinary care in delaying things by requiring an indemnity agreement, rather than returning to BankUnited the funds that Regions knew belonged to Homeland and would be used in the Homeland Transaction, and by failing to follow-up on that request for an indemnity agreement given that it knew it was holding the frozen, fraudulently taken Homeland Funds.

89. Regions further negligently breached its duty of care under these circumstances by inaccurately stating to BankUnited that it was returning the approximately $250,000 of Legacy Funds, when in reality Regions was aware that it was actually returning the Homeland Funds.

90. In doing so in connection with these voluntarily undertaken efforts by Regions, Regions also materially increased the risk to Homeland and the Homeland Transaction participants by freezing these funds and then providing them to BankUnited along with incorrect information about their source, which further impeded Homeland's ability to discover and recover the Homeland Funds.

91. Regions also acted negligently and materially increased the risk to Homeland and the Homeland Participants by failing to inform them of these events, which were learned in the Foreclosure Litigation.

92. As a direct and proximate result of the above-described negligent recovery

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000013 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

efforts of Regions, First American has suffered injury and damages in excess of the jurisdictional minimum, in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**Common Law Indemnity**
**(Against All Defendants)**

93. Plaintiff incorporates all preceding allegations as if fully restated herein.

94. Kentucky recognizes common law indemnity where one party has suffered exposure to liability because of the wrongful act of another party or parties with whom the first party is not equally at fault.

95. Based upon the title insurance policy issued by First American insuring the priority of the American Pacific mortgage, First American under said policy became liable contractually to satisfy the Village Capital Note/Mortgage.

96. Had the Defendants properly handled and returned the Homeland Funds to Homeland, the Village Capital Note/Mortgage would have been satisfied and First American would not have sustained a loss under its policy of title insurance.

97. Ultimately First American paid the debts associated with the mishandled Homeland Funds, which loss was directly caused by the negligence and negligent recovery efforts of Regions and BankUnited, individually and in combination.

98. In so doing, First American ultimately bore responsibility for compensating the plaintiff in the Foreclosure Litigation and relieving the defendants and third-party defendants therein, including Homeland, of liability for same, thereby compensating them.

99. First American itself bore no culpability or fault in the loss, other than the liability as the insurer for the American Pacific mortgage, which was triggered entirely by Defendants' wrongful acts in negligently mishandling the Homeland Funds and assisting Homeland in their recovery.

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000014 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:20:26 PM 91970

100. There is no contractual indemnity agreement between First American and Defendants.

101. As a direct and proximate result of the negligent acts of the Defendants, Plaintiff became obligated to fulfill its legal duty to resolve the debts associated with the Homeland Funds in the Foreclosure Litigation and to indemnify and compensate all such parties for same, despite the fact that such loss was created solely by Defendants' negligence.

102. Plaintiff has suffered injury and damages in excess of the jurisdictional minimum, in an amount to be proven at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff First American prays for judgment and relief as follows:

a. For judgment in Plaintiff's favor and against all Defendants as to all claims for relief asserted herein, with relief in the alternative where appropriate;

b. For an award of compensatory damages, and any other damages as appropriate, in an amount sufficient to make Plaintiff whole, jointly and severally as applicable;

c. For attorneys' fees, costs, and pre- and post-judgment interest; and

d. For any and all other relief to which Plaintiff may be entitled.

Respectfully Submitted,

/s/ C. Richard Colvin
C. RICHARD COLVIN (KBA #86067)
STEPHEN S. SCHMIDT (KBA #95063)
STRAUSS TROY CO., LPA
50 E. RiverCenter Blvd., Suite 200
Covington, KY 41011
crcolvin@strausstroy.com
ssschmidt@strausstroy.com
(513) 621-8900

Presiding Judge: HON. DAN ZALLA (617377)
COM : 000015 of 000015

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:00 PM 91970



[redacted]

# NOTE

FHA Case No. [redacted]

| | | |
|---|---|---|
| December 21, 2021<br>[Date] | HENDERSON,<br>[City] | Nevada<br>[State] |

701 Brant Ct, Alexandria, KY 41001
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$252,635.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Village Capital & Investment LLC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **2.750 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **February 1, 2022.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **April 1, 2045,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2550 Paseo Verde Parkway, Suite 100 Henderson, NV 89074** or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$1,226.62.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000008 of 000029
EXH : 000001 of 000003



EXHIBIT 1

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:00 PM
91970

04/20/2023 09:47:26 AM

LOAN #: [redacted]

all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

James D. Saunders _______________ (Seal)
JAMES D SAUNDERS

Catherine L Saunders _______________ (Seal)
CATHERINE L SAUNDERS

**Lender: Village Capital & Investment LLC**
**NMLS ID: [redacted]**
**Loan Originator: Justin Naylor**
**NMLS ID: [redacted]**

**[Sign Original Only]**



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)

COM : 000009 of 000029
EXH : 000002 of 000003

Filed 25-CI-01246 12/05/2025 Taunya Nolan Jack, Campbell Circuit Clerk

Filed 23-CI-00306 04/10/2023 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:00 PM 91970

# ALLONGE TO NOTE

LOAN # [redacted]

LOAN AMOUNT **$252,635.00**

PROPERTY ADDRESS **701 Brant Ct**
**Alexandria, KY 41001**

ALLONGE TO NOTE DATED **December 21, 2021**

IN FAVOR OF **Village Capital & Investment LLC**

AND EXECUTED BY **James D Saunders AND Catherine L Saunders**

PAY TO THE ORDER OF

WITHOUT RECOURSE **Village Capital & Investment LLC**

BY ______________________________
**Allen Knudson**

TITLE **President**

OR

BY *[signature]*
**Nathan Timpson**
**TITLE: Vice President**

Document [redacted]
ICE Mortgage Technology, Inc.

GN13 0103
GN13 (CLS)
12/[illegible] AM PST

Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)

COM : 000010 of 000029
EXH : 000003 of 000003

Filed 23-CI-00306 04/10/2023 T[redacted]Jack, Campbell Circuit Clerk

Filed 25-CI-01246 12/05/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970



Milestone
2855 Saint Rose Parkway
Suite 110
Henderson, NV 89052

When recorded, return to:
Village Capital & Investment LLC
Attn: Final Docs
2550 Paseo Verde Parkway
Suite 100
Henderson, NV 89074

GENERAL INDEX 2nd SERIES
GROUP NO. 70350/H3
INDEX CLERK

This document was prepared by:
Melissa Leuty
Village Capital & Investment, LLC
2863 St Rose Parkway
Henderson, NV 89052
888-330-6597

Signature of Preparer

DOCUMENT NO: 5147018
RECORDED: January 14,2022 10:31:00 AM
TOTAL FEES: $126.00
COUNTY CLERK: JIM LUERSEN
DEPUTY CLERK: CECELIA MILLER
COUNTY: CAMPBELL COUNTY
REG BRANCH: NEW DOC BRANCH: ALE
BOOK: M1070 PAGES: 93 - 111

Title Order No [redacted]
Escrow No.: [redacted]
LOAN #: [redacted]

[Space Above This Line For Recording Data]

# MORTGAGE

FHA Case No. [redacted]

MIN: [redacted]

MERS PHONE #: 1-888-679-6377

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **December 21, 2021,** together with all Riders to this document.

(B) **"Borrower"** is **CATHERINE L SAUNDERS AND JAMES D SAUNDERS FOR AND DURING THEIR JOINT LIVES, REMAINDER TO THE SURVIVOR OF THEM.**

*Borrower is the mortgagor under this Security Instrument.*



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000011 of 000029
EXH : 000001 of 000019



EXHIBIT
2

LOAN #:[redacted]

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is **Village Capital & Investment LLC.**

Lender is **a Limited Liability Company,** organized and existing under the laws of **Delaware.**
Lender's mailing address is **2550 Paseo Verde Parkway, Suite 100, Henderson, NV 89074**

and the address of Lender's principal place of business is **2550 Paseo Verde Parkway, Suite 100, Henderson, NV 89074.**

**(E) "Note"** means the promissory note signed by Borrower and dated **December 21, 2021.** The Note states that Borrower owes Lender **TWO HUNDRED FIFTY TWO THOUSAND SIX HUNDRED THIRTY FIVE AND NO/100* * * * * * * * * * * * * * *** Dollars (U.S. **$252,635.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2045.** This Security Instrument secures 150% of the principal amount of the Note, but any amount secured in excess of the amount stated in the second sentence of this paragraph must be a "Protective Advance" as defined by Section 26 hereof (or, if the rate of interest is adjustable, may be interest added to principal, commonly called "negative amortization").
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider ☐ Condominium Rider ☒ Planned Unit Development Rider
☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
COM : 000012 of 000029
Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000002 of 000019

LOAN #: [redacted]

the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **Campbell**
[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]:

**SEE ATTACHED EXHIBIT A LEGAL DESCRIPTION**
**APN #: 999-99-31-337.25**

which currently has the address of **701 Brant Ct, Alexandria,**
[Street] [City]
Kentucky **41001** ("Property Address"):
[Zip Code]

Being the same property conveyed to Borrower by deed dated 4/23/2021 of record in Deed Book D346 page 383 Campbell County Clerk's office.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall

LOAN #: [redacted]

also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000014 of 000029
EXH : 000004 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums.These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000015 of 000029
EXH : 000005 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

**LOAN #:** [redacted]

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000016 of 000029
EXH : 000006 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000017 of 000029
EXH : 000007 of 000019

LOAN #: [redacted]

appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000018 of 000029
EXH : 000008 of 000019

LOAN #: [redacted]

fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
COM : 000020 of 000029
Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000010 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking; discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000021 of 000029
EXH : 000011 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000022 of 000029
EXH : 000012 of 000019

LOAN #: [redacted]

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.**

**25. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**27. Taxes and Assessments on Mortgage Insurance Premiums.** If mortgage insurance premiums are required to be paid by Borrower, then in addition to such premiums, Borrower shall pay all taxes and assessments thereon for so long as Borrower is required by Lender to pay the premiums. All taxes and assessments on premiums due and payable by Borrower shall be considered an Escrow Item and shall be paid by Borrower to Lender in the manner provided for Escrow Items in Section 3.

**28. Protective Advances.** This Security Instrument secures not only the initial advance under the Note, but also all Protective Advances. "Protective Advances" mean any advances to maintain and protect the Property and/or protect Lender's rights in the Property made by Lender or by any successors or assigns of Lender, including, without limitation, any sums, with interest, advanced under Sections 5, 9, or 13 hereof: (a) to pay any Escrow Items; (b) to pay any sums secured by a lien or encumbrance on the Property without which payment the secured position of Lender, including the priority of this Security Instrument, or any successor or assign of Lender might be jeopardized; (c) to secure, repair, maintain, protect or preserve the Property, or Lender's interest in the Property and rights under this Security Instrument; or (d) to pay any and all expenses incident to the collection of the indebtedness secured by this Security Instrument and the foreclosure thereof by judicial proceedings, or otherwise, pursuant to Applicable Law, whether the Property is still owned by the Borrower or is owned by a Successor in Interest of Borrower.

To the extent that any Protective Advances are deemed to be "future advances" or "additional indebtedness" within the meaning of KRS 382.520, this Security Instrument secures such future advances or additional indebtedness, provided that the total indebtedness at any one time outstanding shall not exceed 150% of the original principal amount of the Note, with interest thereon, and whether or not evidenced by



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000023 of 000029
EXH : 000013 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

notes, accounts or obligations of any kind whatsoever. It shall be a default under this Security Instrument if Borrower requests a release, in the manner by KRS 382.520, of any portion of the lien securing any of the additional indebtedness secured by this Security Instrument pursuant to KRS 382.520 prior to the date that all of the obligations secured by this Security Instrument have been paid and discharged and the Note and this Security Instrument have been terminated, and Borrower hereby waives any and all right to request such a release to the maximum extent permitted by Applicable Law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

James D. Saunders 12-21-2021 (Seal)
JAMES D SAUNDERS DATE

Catherine L Saunders 12.21.2021 (Seal)
CATHERINE L SAUNDERS DATE



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000024 of 000029
EXH : 000014 of 000019

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:08 PM 91970

LOAN #: [redacted]

State of Kentucky
County of Campbell, ss

The foregoing instrument was acknowledged before me this 12-21-2021 by JAMES D SAUNDERS AND CATHERINE L SAUNDERS.

My Commission Expires: 2-07-2024 Patricia O. K. Notary Public

PATRICIA A KREILING
Notary Public - State at Large
State of Kentucky
Notary ID # KYNP601
My Commission Expires Feb. 7, 2024

Lender: Village Capital & Investment LLC
NMLS ID: [redacted]
Loan Originator: Justin Naylor
NMLS ID: [redacted]

Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)



COM : 000025 of 000029
EXH : 000015 of 000019

LOAN #: [redacted]
MIN: [redacted]

FHA Case No.
[redacted]

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **21st** day of **December, 2021,** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **Village Capital & Investment LLC, a Limited Liability Company**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:
**701 Brant Ct**
**Alexandria, KY 41001.**

The Property Address is a part of a planned unit development ("PUD") known as
**POND CREEK CROSSING**

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000026 of 000029
EXH : 000016 of 000019

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

LOAN #: [redacted]

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then:

(i) Lender waives the provision in Paragraph 3 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and

(ii) Borrower's obligation under Paragraph 5 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000027 of 000029
EXH : 000017 of 000019

Filed 25-CI-01246 12/05/2025 Taunya Nolan Jack, Campbell Circuit Clerk

Filed 23-CI-00306 04/10/2023 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:08 PM 91970

LOAN #: [redacted]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

12-21-2021 (Seal)
JAMES D SAUNDERS DATE

12 21 2021 (Seal)
CATHERINE L SAUNDERS DATE



Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000028 of 000029
EXH : 000018 of 000019

Filed 23-CI-00306 04/10/2023 Tau[redacted]mpbell Circuit Clerk

Filed 25-CI-01246 12/05/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:08 PM
91970

**Exhibit A**

**Legal Description**

The following described property in Campbell County, State of Kentucky, to-wit:

Being all of Lot Number 9, Section No. 7, North West Addition, of Pond Creek Crossing as shown on Plat Cabinet E, Slide 326B, of the Campbell County Clerk's records at Alexandria, Kentucky.

Being the same property or a portion of the same property Catherine L. Saunders and Jamie Saunders, for their joint lives, remainder to the survivor of them by instrument dated August 8, 2018 from Gary C Kissee, married whose wife is Kimberly Kissee filed on August 15, 2018 in Book 330 at Page 682 in the Campbell County records.

This being the same property conveyed to Catherine L. Saunders and James D. Saunders, for and during their Joint Lives, Remainder to the Survivor of them by that deed of Cathy Saunders also known as Catherine L. Saunders and Jamie Saunders also known as James D. Saunders, for their Joint Lives, Remainder to the Survivor of them recorded 28th day of April, 2021 in Deed Book D346, Page 383-386, aforesaid records.

Group # 70250/H3 (added)

**Parcel ID:** 999-99-31-337.25

**Commonly known as:** 701 Brant Court, Alexandria, KY 41001

Presiding Judge: HON. JULIE REINHARDT WARD (617222)
Presiding Judge: HON. DAN ZALLA (617377)
COM : 000029 of 000029
EXH : 000019 of 000019

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:14 PM 91970

First American Title™

# Loan Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Schedule A

POLICY NUMBER [redacted]

Name and Address of Title Insurance Company:
**FIRST AMERICAN TITLE INSURANCE COMPANY**, **1 First American Way, Santa Ana, CA 92707**

File No.: [redacted]

Loan No.: [redacted]

Address Reference: 701 Brant Court, Alexandria, KY 41001

Amount of Insurance: $346,750.00

Date of Policy: January 4, 2023 at 1:17 PM or recording date of the insured instrument, whichever is later

1. Name of Insured:
   American Pacific Mortgage Corporation and/or warehouse lenders Its successors and/or assigns
2. The estate or interest in the Land that is encumbered by the Insured Mortgage is:
   fee simple
3. Title is vested in:
   Kody Jarrells and Samantha Kate Jarrells
4. The Insured Mortgage, and its assignments, if any, are described as follows:
   A Mortgage from Kody Jarrells and Samantha Kate Jarrells, husband and wife to American Pacific Mortgage Corporation and/or warehouse lenders Its successors and/or assigns dated December 16, 2022 in the original principal amount of $346,750.00 and recorded on January 4, 2023 at 1:17 PM in Book M1095, Page 801 in the official records of the Campbell County Clerk.
5. The Land referred to in this policy is described as follows:
   Property description set forth in Exhibit A attached hereto and made a part hereof.
6. This policy incorporates by reference those ALTA endorsements selected below:

| | |
|---|---|
| ☐ ALTA 4-06 | Condominium (all assessment liens) |
| ☐ ALTA 4.1-06 | Condominium (assessments unpaid at policy date) |
| ☒ ALTA 5-06 | Planned Unit Development (all assessment liens) |
| ☐ ALTA 5.1-06 | Planned Unit Development (assessment unpaid at policy date) |
| ☐ ALTA 6-06 | Variable Rate |
| ☐ ALTA 6.2-06 | Variable Rate, Negative Amortization |
| ☒ ALTA 8.1-06 | Environmental Protection Lien (Residential) - Paragraph b refers to the following state statutes: NONE |
| ☒ ALTA 9-06 | Restrictions, Encroachments, Minerals - Loan |
| ☐ ALTA 13.1-06 | Leasehold - Loan |
| ☐ ALTA 14-06 | Future Advance - Priority |
| ☐ ALTA 14.1-06 | Future Advance - Knowledge |
| ☐ ALTA 14.3-06 | Future Advance - Reverse Mortgage |
| ☐ ALTA 22-06 | Location - The type of improvement is a Residence (1-4 Families) and the street address is as shown above. |

EXHIBIT 3

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000001 of 000009

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:14 PM
91970

American Homeland Title Agency, 31540
Agent Name



By: ____________________________
Authorized Countersignature
John Yonas

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000002 of 000009

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:14 PM 91970

First American Title™

# Loan Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Schedule BI

POLICY NUMBER

[redacted]

File No.: [redacted]

## PART I

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of::

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. Any mineral or mineral rights leased, granted or retained by current or prior owners.

6. Taxes and assessments for the year 2022 and subsequent years, which are not yet due and payable.

7. Subject to declaration of covenants, conditions, and restrictions as set forth in Official Record Volume 197, Page 499, and any amendments and supplements thereto, Campbell County, Kentucky Records.

8. Subject to a 10' utility easement as recorded in Plat Cabinet E, Slide 326B, Campbell County, Kentucky Records.

9. This property is a PUD.

   24 Month Chain of Title-NOTE: FOR INFORMATIONAL PURPOSES ONLY:

   Quit Claim Deed from Cathy Saunders aka Catherine L. Saunders and Jamie Saunders aka James D. Saunders, to Catherine L. Saunders and James D. Saunders, dated 04/23/21, recorded 04/28/21, in Official Record Volume 346, Page 383, Campbell County, Kentucky Records.

   General Warranty Deed from Gary C. Kissee and Kimberly Kissee, to Catherine Saunders and Jamie Saunders, dated 08/08/18, recorded 08/15/18, in Official Record Volume 330, Page 682, Campbell County, Kentucky Records.

   General Warranty Deed from Richard A. Straus, III and Stephanie Straus, husband and wife, to Gary C. Kissee, single, dated 07/25/16, recorded 08/01/16, in Official Record Volume 320, Page 236, Campbell County, Kentucky Records.

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000003 of 000009

Filed 25-CI-01246 12/05/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:14 PM 91970

First American Title™

Loan Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Schedule BII

POLICY NUMBER

[redacted]

File No.: [redacted]

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:
**NONE**

Presiding Judge: HON. DAN ZALLA (617377)

EXH : 000004 of 000009

Filed 25-CI-01246 12/05/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:14 PM 91970

First American Title™

# Loan Policy of Title Insurance

ISSUED BY

**First American Title Insurance Company**

# Exhibit A

POLICY NUMBER [redacted]

Owners Policy No.:
Loan Policy No.: [redacted]
Agent File No.: [redacted]

The Land referred to herein below is situated in the County of Campbell, Commonwealth of Kentucky, and is described as follows:

Being all of Lot Number 9, Section No 7, Northwest Addition, of Pond Creek Crossing as shown on Plat Cabinet E, Slide 326B, of the Campbell County Clerk's records at Alexandria, Kentucky.

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000005 of 000009

First American Title™

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:14 PM
91970

## ENVIRONMENTAL PROTECTION LIEN ENDORSEMENT

**Issued by**

***First American Title Insurance Company***

Attached to Policy No.: [redacted]

File No.: [redacted]

The insurance afforded by this endorsement is only effective if the Land is used or is to be used primarily for residential purposes.

The Company insures against loss or damage sustained by the Insured by reason of lack of priority of the lien of the Insured Mortgage over

(a) any environmental protection lien that, at Date of Policy, is recorded in those records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge, or is filed in the records of the clerk of the United States district court for the district in which the Land is located, except as set forth in Schedule B; or

(b) any environmental protection lien provided by any state statute in effect at Date of Policy, except environmental protection liens provided by the following state statutes: NONE

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date: **January 4, 2023**

***First American Title Insurance Company***

Kenneth D. DeGiorgio, President    Greg L. Smith, Secretary

By:____________________________
Authorized Countersignature

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000006 of 000009

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:14 PM
91970

First American Title™

## RESTRICTIONS, ENCROACHMENTS, MINERALS – LOAN POLICY ENDORSEMENT

**Issued by**

***First American Title Insurance Company***

Attached to Policy No.: [redacted] File No.: [redacted]

1. The insurance provided by this endorsement is subject to the exclusions in Section 5 of this endorsement; and the Exclusions from Coverage, the Exceptions from Coverage contained in Schedule B, and the Conditions in the policy.
2. For the purposes of this endorsement only**:**
   a. "Covenant" means a covenant, condition, limitation or restriction in a document or instrument in effect at Date of Policy,
   b. "Improvement" means an improvement, including any lawn, shrubbery, or trees, affixed to either the Land or adjoining land at Date of Policy that by law constitutes real property.
3. The Company insures against loss or damage sustained by the Insured by reason of:
   a. A violation of a Covenant that:
      i. divests, subordinates, or extinguishes the lien of the Insured Mortgage,
      ii. results in the invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage,
      or
      iii. causes a loss of the Insured's Title acquired in satisfaction or partial satisfaction of the Indebtedness;
   b. A violation on the Land at Date of Policy of an enforceable Covenant, unless an exception in Schedule B of the policy identifies the violation;
   c. Enforced removal of an Improvement located on the Land as a result of a violation, at Date of Policy, of a building setback line shown on a plat of subdivision recorded or filed in the Public Records, unless an exception in Schedule B of the policy identifies the violation; or
   d. A notice of a violation, recorded in the Public Records at Date of Policy, of an enforceable Covenant relating to environmental protection describing any part of the Land and referring to that Covenant, but only to the extent of the violation of the Covenant referred to in that notice, unless an exception in Schedule B of the policy identifies the notice of the violation.
4. The Company insures against loss or damage sustained by reason of:
   a. An encroachment of:
      i. an Improvement located on the Land, at Date of Policy, onto adjoining land or onto that portion of the Land subject to an easement; or
      ii. an Improvement located on adjoining land onto the Land at Date of Policy,

   unless an exception in Schedule B of the policy identifies the encroachment otherwise insured against in Sections 4.a.i. or 4.a.ii.;
   b. A final court order or judgment requiring the removal from any land adjoining the Land of an encroachment identified in Schedule B; or
   c. Damage to an Improvement located on the Land, at Date of Policy:

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000007 of 000009

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

NOT ORIGINAL DOCUMENT
12/30/2025 03:21:14 PM
91970

i. that is located on or encroaches onto that portion of the Land subject to an easement excepted in Schedule B, which damage results from the exercise of the right to maintain the easement for the purpose for which it was granted or reserved; or

ii. resulting from the future exercise of a right to use the surface of the Land for the extraction or development of minerals or any other subsurface substances excepted from the description of the Land or excepted in Schedule B.

5. This endorsement does not insure against loss or damage (and the Company will not pay costs, attorneys' fees, or expenses) resulting from:

   a. any Covenant contained in an instrument creating a lease;

   b. any Covenant relating to obligations of any type to perform maintenance, repair, or remediation on the Land;

   c. except as provided in Section 3.d, any Covenant relating to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances.

   d. contamination, explosion, fire, flooding, vibration, fracturing, earthquake or subsidence; or

   e. negligence by a person or an Entity exercising a right to extract or develop minerals or other subsurface substances.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date: **January 4, 2023**

***First American Title Insurance Company***

Kenneth D. DeGiorgio, President    Greg L. Smith, Secretary

By:______________________________
Authorized Countersignature

Presiding Judge: HON. DAN ZALLA (617377)

EXH : 000008 of 000009

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:14 PM 91970

First American Title™

American Land Title Association Endorsement 5-06
(Planned Unit Development – Assessments Priority)
Adopted 06-17-2006 Revised 10-16-2008, 02-03-2010
Technical Correction 12-01-2016, 12-01-2017

# PLANNED UNIT DEVELOPMENT – ASSESSMENTS PRIORITY ENDORSEMENT

**Issued by**

***First American Title Insurance Company***

Attached to Policy No.: [redacted] File No.: [redacted]

The Company insures against loss or damage sustained by the Insured by reason of:

1. Present violations of any restrictive covenants referred to in Schedule B that restrict the use of the Land or the forfeiture or reversion of Title by reason of any provision contained in the restrictive covenants. As used in this paragraph 1, the words "restrictive covenants" do not refer to or include any covenant, condition or restriction (a) relating to obligations of any type to perform maintenance, repair or remediation on the Land, or (b) pertaining to environmental protection of any kind or nature, including hazardous or toxic matters, conditions, or substances, except to the extent that a notice of a violation or alleged violation affecting the Land has been recorded in the Public Records at Date of Policy and is not excepted in Schedule B.

2. The priority of any lien for charges and assessments in favor of any association of owners that are provided for in any document at Date of Policy and referred to in Schedule B over the lien of any Insured Mortgage identified in Schedule A.

3. The enforced removal of any existing structure on the Land (other than a boundary wall or fence) because it encroaches onto adjoining land or onto any easements.

4. The failure of the Title by reason of a right of first refusal to purchase the Land that was exercised or could have been exercised at Date of Policy.

This endorsement is issued as part of the policy. Except as it expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsements, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance. To the extent a provision of the policy or a previous endorsement is inconsistent with an express provision of this endorsement, this endorsement controls. Otherwise, this endorsement is subject to all of the terms and provisions of the policy and of any prior endorsements.

Date: **January 4, 2023**

***First American Title Insurance Company***

Kenneth D. DeGiorgio, President Greg L. Smith, Secretary

By:________________________
Authorized Countersignature

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN LAND TITLE ASSOCIATION

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000009 of 000009

NOT ORIGINAL DOCUMENT 12/30/2025 03:21:21 PM 91970

[redacted]

FIRST AMERICAN

9000 E Pima Center Parkway, Suite 200
Scottsdale, AZ 85258
866-512-1327

| Supplier Number | [redacted] | | | | |
|---|---|---|---|---|---|
| Customer Number | | | | | |
| Invoice Date | Invoice Number | Reference | Invoice Amount | Description | PO Number |
| 22-Jan-2025 | [redacted] | [redacted] | 276,460.80 | | UNMATCHED |
| | | Total | 276,460.80 | | |

DO NOT CASH THIS CHECK UNLESS YOU CAN SEE A TRUE WATERMARK
HOLD UP TO LIGHT TO SEE "DOCUCHECK"

FIRST AMERICAN

FIRST AMERICAN TITLE INSURANCE COMPANY
9000 E Pima Center Parkway, Suite 200
Scottsdale, AZ 85258
866-512-1327

FIRST AMERICAN TRUST, FSB
5 FIRST AMERICAN WAY
SANTA ANA CA 92707

[redacted]

90-4125/1222

Date 28-Jan-2025

Two Hundred Seventy-Six Thousand Four Hundred Sixty Dollars And Eighty Cents*****

$ ****276,460.80
AMOUNT (USD)

Not valid after 180 days

PAY TO THE ORDER OF
PLANET HOME LENDING LLC
5020 RIVERSIDE DRIVE
STE 300
IRVING TX 75039
US

[redacted]
AUTHORIZED SIGNATURE(S)



EXHIBIT 4

Presiding Judge: HON. DAN ZALLA (617377)
EXH : 000001 of 000001

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

NOT ORIGINAL DOCUMENT 01/15/2026 08:59:17 AM 91970

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANK UNITED NA**
**LEGAL DEPARTMENT**
**7825 NW 148TH ST**
**MIAMI LAKES, FL 33016**

Memo: Related party is BANKUNITED NA

The Commonwealth of Kentucky to Defendant:
**BANKUNITED NA**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/5/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245419
CIRCUIT: 25-CI-01246 Certified Mail
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

NOT ORIGINAL DOCUMENT 01/15/2026 08:59:03 AM 91970

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice Courts.ky.gov

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANKUNITED NA**
**7825 NW 148TH ST**
**HIALEAH, FL 330161554**

Memo: Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/5/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245417
CIRCUIT: 25-CI-01246 Certified Mail
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

NOT ORIGINAL DOCUMENT 01/15/2026 08:59:11 AM 91970

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**
**421 WEST MAIN STREET**
**FRANKFORT, KY 40601**

Memo: Related party is REGIONS BANK

The Commonwealth of Kentucky to Defendant:
**REGIONS BANK**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/5/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245418
CIRCUIT: 25-CI-01246 Certified Mail
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

NOT ORIGINAL DOCUMENT 01/15/2026 08:57:51 AM 91970

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice Courts.ky.gov

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **REGIONS BANK**
**1900 FIFTH AVENUE NORTH**
**BIRMINGHAM, AL 35203**

Memo: Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/5/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245416
CIRCUIT: 25-CI-01246 Certified Mail
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

**Commonwealth of Kentucky**
**Taunya Nolan Jack, Campbell Circuit Clerk**

NOT ORIGINAL DOCUMENT 01/15/2026 08:52:25 AM 91970

**Case #:** 25-CI-01246 **Envelope #:** 12262345

**Received From:** CHARLES R COLVIN **Account Of:** CHARLES R COLVIN

**Case Title:** FIRST AMERICAN TITLE INSURANCE COMPAN VS. REGIONS BANK ET A **Confirmation Number:** 212514972

**Filed On** 12/5/2025 3:46:30PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Court Facilities Fee | $25.00 |
| 2 | Access To Justice Fee | $20.00 |
| 3 | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4 | Money Collected For Others(Postage) | $87.76 |
| 5 | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 6 | Library Fee | $3.00 |
| 7 | Civil Filing Fee | $150.00 |
| 8 | Charges For Services(Copy - Photocopy) | $19.60 |
| | **TOTAL:** | $330.36 |

NOT ORIGINAL DOCUMENT 01/15/2026 08:57:38 AM 91970

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANKUNITED NA**
**ATTN: RAJINDER P. SINGH, CEO**
**14817 OAK LANE**
**MIAMI LAKES, FL 33106**

The Commonwealth of Kentucky to Defendant:
**BANKUNITED NA**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/10/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245592
CIRCUIT: 25-CI-01246 Long Arm Statute – SOS - Restricted Delivery
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

NOT ORIGINAL DOCUMENT 01/15/2026 08:57:07 AM 91970

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANKUNITED NA**
**7825 NW 148TH ST**
**HIALEAH, FL 33016**

Memo: Registered Agent of Service exists. Alternative Service Address exists. Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/10/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245588
CIRCUIT: 25-CI-01246 Long Arm Statute – Secretary of State
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

NOT ORIGINAL DOCUMENT 01/15/2026 08:57:30 AM 91970

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANKUNITED NA**
**7825 NW 148TH ST**
**HIALEAH, FL 33016**

Memo: Registered Agent of Service exists. Alternative Service Address exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/10/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________, 20____

______________________________
Served By

______________________________
Title

Summons ID: @00000245594
CIRCUIT: 25-CI-01246 Long Arm Statute – SOS - Restricted Delivery
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A





eFiled

AOC-E-105 Sum Code: CI
Rev. 9-14

NOT ORIGINAL DOCUMENT 01/15/2026 08:57:23 AM 91970

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANKUNITED NA**
**7825 NW 148TH ST**
**HIALEAH, FL 33016**

Memo: Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/10/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

Summons ID: @00000245590
CIRCUIT: 25-CI-01246 Long Arm Statute – Secretary of State
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

CI : 000001 of 000001

AOC-E-105 Sum Code: CI
Rev. 9-14

NOT ORIGINAL DOCUMENT 01/15/2026 08:57:17 AM 91970

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff*, **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **BANKUNITED NA**
**14817 OAK LANE**
**MIAMI LAKES, FL 33106**

Memo: Related party is BANKUNITED NA

The Commonwealth of Kentucky to Defendant:
**BANKUNITED NA**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/10/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

CI : 000001 of 000001

Summons ID: @00000245586
CIRCUIT: 25-CI-01246 Long Arm Statute – Secretary of State
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

NOT ORIGINAL DOCUMENT 01/15/2026 08:56:55 AM 91970

AOC-E-105 Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice *Courts.ky.gov*

CR 4.02; Cr Official Form 1

Case #: **25-CI-01246**
Court: **CIRCUIT**
County: **CAMPBELL**

# CIVIL SUMMONS

*Plaintiff,* **FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A**, *Defendant*

TO: **CORPORATION SERVICE COMPANY**
**315 HIGH STREET**
**FRANKFORT, KY 40601**

Memo: Related party is REGIONS BANK

The Commonwealth of Kentucky to Defendant:
**REGIONS BANK**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Taunya Nolan Jack
Campbell Circuit Clerk
Date: **12/10/2025**

Presiding Judge: HON. DAN ZALLA (617377)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: ______________________________

☐ Not Served because: ______________________________

Date: ____________________, 20______

______________________________
Served By

______________________________
Title

Summons ID: @00000245583
CIRCUIT: 25-CI-01246 Certified Mail
FIRST AMERICAN TITLE INSURANCE COMPANY VS. REGIONS BANK ET A



eFiled

NOT ORIGINAL DOCUMENT 01/15/2026 09:12:41 AM 91970

Commonwealth of Kentucky
Taunya Nolan Jack, Campbell Circuit Clerk

Case #: 25-CI-01246 Envelope #: 12305697

Received From: COLVIN, CHARLES R Account Of: COLVIN, CHARLES R

Case Title: FIRST AMERICAN TITLE INSURANCE COMPAN VS. REGIONS BANK ET A Confirmation Number: 212733227

Filed On 12/10/2025 4:29:40PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Money Collected For Others(Postage) | $21.94 |
| 2 | Charges For Services(Copy - Photocopy) | $4.90 |
| | TOTAL: | $26.84 |

**Commonwealth of Kentucky**
**Taunya Nolan Jack, Campbell Circuit Clerk**

NOT ORIGINAL DOCUMENT 01/15/2026 09:13:12 AM 91970

**Case #:** 25-CI-01246 **Envelope #:** 12305937
**Received From:** COLVIN, CHARLES R **Account Of:** COLVIN, CHARLES R
**Case Title:** FIRST AMERICAN TITLE INSURANCE COMPAN VS. REGIONS BANK ET A **Confirmation Number:** 212734800
**Filed On** 12/10/2025 4:25:28PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Money Collected For Others(Secretary of State Electronic Services) | $20.00 |
| 2 | Money Collected For Others(Secretary of State Service Copies) | $9.80 |
| 3 | Charges For Services(Attestation) | $0.50 |
| | TOTAL: | $30.30 |

Generated: 12/11/2025

**Commonwealth of Kentucky**
**Taunya Nolan Jack, Campbell Circuit Clerk**

NOT ORIGINAL DOCUMENT 01/15/2026 09:13:27 AM 91970

**Case #:** 25-CI-01246 **Envelope #:** 12306072

**Received From:** COLVIN, CHARLES R **Account Of:** COLVIN, CHARLES R

**Case Title:** FIRST AMERICAN TITLE INSURANCE COMPAN VS. REGIONS BANK ET A **Confirmation Number:** 212734955

**Filed On** 12/10/2025 4:27:16PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Money Collected For Others(Secretary of State Electronic Services) | $10.00 |
| 2 | Money Collected For Others(Secretary of State Service Copies) | $4.90 |
| 3 | Charges For Services(Attestation) | $0.50 |
| | **TOTAL:** | $15.40 |

**Commonwealth of Kentucky**
**Taunya Nolan Jack, Campbell Circuit Clerk**

NOT ORIGINAL DOCUMENT 01/15/2026 09:13:40 AM 91970

**Case #:** 25-CI-01246 **Envelope #:** 12306101

**Received From:** COLVIN, CHARLES R **Account Of:** COLVIN, CHARLES R

**Case Title:** FIRST AMERICAN TITLE INSURANCE COMPAN VS. REGIONS BANK ET A **Confirmation Number:** 212735339

**Filed On** 12/10/2025 4:31:24PM

| # | Item Description | Amount |
|---|---|---|
| 1 | Money Collected For Others(Secretary of State Electronic Services) | $36.80 |
| 2 | Money Collected For Others(Secretary of State Service Copies) | $9.80 |
| 3 | Charges For Services(Attestation) | $0.50 |
| | **TOTAL:** | $47.10 |

UNITED STATES POSTAL SERVICE

NOT ORIGINAL DOCUMENT 12/30/2025 03:37:09 PM 91970

Date Produced: 12/16/2025

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8346 5492 16. Our records indicate that this item was delivered on 12/15/2025 at 01:06 p.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

CORPORATION SERVICE COMPANY
315 HIGH STREET
FRANKFORT KY 40601

COR : 000001 of 000002

Customer Reference Number: C6423059.39188573

Filed 25-CI-01246 12/16/2025 Taunya Nolan Jack, Campbell Circuit Clerk
NOT ORIGINAL DOCUMENT 12/30/2025 03:37:09 PM 91970

USPS MAIL PIECE TRACKING NUMBER: 420406019236090194038346549216
MAILING DATE: 12/11/2025
DELIVERED DATE: 12/15/2025
Custom 1: DriverId-12305697
Custom 2: PartyId-79869155
Custom 3: SummonsNum-@00000245583
Custom 4: CentralMailId-270887
Custom 5: Source County-CAMPBELL

MAIL PIECE DELIVERY INFORMATION:

CORPORATION SERVICE COMPANY
315 HIGH STREET
FRANKFORT KY 40601

MAIL PIECE TRACKING EVENTS:

| | | |
|---|---|---|
| 12/11/2025 12:19 | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | FRANKFORT,KY 40601 |
| 12/11/2025 15:57 | SHIPMENT RECEIVED ACCEPTANCE PENDING | FRANKFORT,KY 40601 |
| 12/12/2025 18:51 | ORIGIN ACCEPTANCE | FRANKFORT,KY 40601 |
| 12/12/2025 20:06 | PROCESSED THROUGH USPS FACILITY | LOUISVILLE,KY 40221 |
| 12/13/2025 13:56 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 12/15/2025 13:06 | DELIVERED FRONT DESK/RECEPTION/MAIL ROOM | FRANKFORT,KY 40601 |

COR : 000002 of 000002

Filed 25-CI-01246 12/18/2025 Taunya Nolan Jack, Campbell Circuit Clerk

UNITED STATES POSTAL SERVICE

NOT ORIGINAL DOCUMENT 12/30/2025 03:38:41 PM 91970

Date Produced: 12/18/2025

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8345 8325 86. Our records indicate that this item was delivered on 12/17/2025 at 12:56 p.m. in BIRMINGHAM, AL 35203. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

REGIONS BANK
1900 FIFTH AVENUE NORTH
BIRMINGHAM AL 35203

COR : 000001 of 000002

Customer Reference Number: C6413220.39109573

Filed 25-CI-01246 12/18/2025 Taunya Nolan Jack, Campbell Circuit Clerk

Filed 25-CI-01246 12/18/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT 12/30/2025 03:38:41 PM 91970

USPS MAIL PIECE TRACKING NUMBER: 420352039236090194038345832586
MAILING DATE: 12/08/2025
DELIVERED DATE: 12/17/2025
Custom 1: DriverId-12262345
Custom 2: PartyId-79637741
Custom 3: SummonsNum-@00000245416
Custom 4: CentralMailId-270086
Custom 5: Source County-CAMPBELL

MAIL PIECE DELIVERY INFORMATION:

REGIONS BANK
1900 FIFTH AVENUE NORTH
BIRMINGHAM AL 35203

MAIL PIECE TRACKING EVENTS:

| | | |
|---|---|---|
| 12/08/2025 15:03 | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | FRANKFORT,KY 40601 |
| 12/08/2025 15:59 | SHIPMENT RECEIVED ACCEPTANCE PENDING | FRANKFORT,KY 40601 |
| 12/10/2025 19:48 | ORIGIN ACCEPTANCE | FRANKFORT,KY 40601 |
| 12/10/2025 21:03 | PROCESSED THROUGH USPS FACILITY | LOUISVILLE,KY 40221 |
| 12/16/2025 10:58 | PROCESSED THROUGH USPS FACILITY | BIRMINGHAM AL DISTRIBUTION CENT 35222 |
| 12/17/2025 02:36 | PROCESSED THROUGH USPS FACILITY | BIRMINGHAM AL DISTRIBUTION CENT 35222 |
| 12/17/2025 10:22 | ARRIVAL AT UNIT | BIRMINGHAM,AL 35222 |
| 12/17/2025 10:33 | OUT FOR DELIVERY | BIRMINGHAM,AL 35203 |
| 12/17/2025 12:56 | DELIVERED LEFT WITH INDIVIDUAL | BIRMINGHAM,AL 35203 |

COR : 000002 of 000002

Filed 25-CI-01246 12/18/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2025 03:40:45 PM
91970

Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Campbell County
Campbell County Courthouse
330 York Street, Room #8
Newport, KY 41071

| | |
|---|---|
| FROM: | SUMMONS DIVISION<br>SECRETARY OF STATE |
| RE: | CASE NO: 25-CI-01246 |
| DEFENDANT: | BANKUNITED NA |
| DATE: | December 19, 2025 |
| USPS Certified Mail ID: | 9202992267700103406913 |

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

December 11, 2025

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

December 11, 2025

We are enclosing the return receipt confirming receipt of summons.

COR : 000001 of 000002

DOCUMENT
Filed 25-CI-01246 12/19/2025 Taunya Nolan Jack, Campbell Circuit Clerk
03:40:45 PM
91970

UNITED STATES POSTAL SERVICE

December 19, 2025

Dear Secretary Of State Commonwealth of Kentucky:

The following is in response to your request for proof of delivery on your item with the tracking number: **9202 9922 6770 0103 4069 13**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Individual Picked Up at Postal Facility |
| **Status Date / Time:** | December 19, 2025, 9:08 am |
| **Location:** | HIALEAH, FL 33016 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Recipient Signature

Signature of Recipient:

Address of Recipient:




Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

COR : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:41:17 PM
91970

Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Campbell County
Campbell County Courthouse
330 York Street, Room #8
Newport, KY 41071

| | |
|---|---|
| FROM: | SUMMONS DIVISION<br>SECRETARY OF STATE |
| RE: | CASE NO: 25-CI-01246 |
| DEFENDANT: | BANKUNITED NA |
| DATE: | December 19, 2025 |
| USPS Certified Mail ID: | 9202992267700103407002 |

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

December 11, 2025

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

December 11, 2025

We are enclosing the return receipt confirming receipt of summons.

COR : 000001 of 000002

UNITED STATES POSTAL SERVICE

December 19, 2025

Dear Secretary Of State Commonwealth of Kentucky:

The following is in response to your request for proof of delivery on your item with the tracking number: **9202 9922 6770 0103 4070 02**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Individual Picked Up at Postal Facility |
| **Status Date / Time:** | December 19, 2025, 9:08 am |
| **Location:** | HIALEAH, FL 33016 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Recipient Signature

Signature of Recipient:

Address of Recipient:



Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

COR : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:41:42 PM
91970

Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Campbell County
Campbell County Courthouse
330 York Street, Room #8
Newport, KY 41071

FROM: SUMMONS DIVISION
SECRETARY OF STATE

RE: CASE NO: 25-CI-01246

DEFENDANT: BANKUNITED NA

DATE: December 19, 2025

USPS Certified Mail ID: 9202992267700103407019

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

December 11, 2025

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

December 11, 2025

We are enclosing the return receipt confirming receipt of summons.

COR : 000001 of 000002

DOCUMENT
Filed 25-CI-01246 12/19/2025 Taunya Nolan Jack, Campbell Circuit Clerk
12/19/2025
03:41:42 PM
91970

UNITED STATES POSTAL SERVICE

December 19, 2025

Dear Secretary Of State Commonwealth of Kentucky:

The following is in response to your request for proof of delivery on your item with the tracking number: **9202 9922 6770 0103 4070 19**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered to Agent, Picked up at USPS |
| **Status Date / Time:** | December 19, 2025, 8:16 am |
| **Location:** | HIALEAH, FL 33016 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: (Authorized Agent) | [illegible] |
| Address of Recipient: | [illegible] |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

COR : 000002 of 000002

Filed 25-CI-01246 12/19/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2025 03:39:33 PM
91970

Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Campbell County
Campbell County Courthouse
330 York Street, Room #8
Newport, KY 41071

| | |
|---|---|
| FROM: | SUMMONS DIVISION<br>SECRETARY OF STATE |
| RE: | CASE NO: 25-CI-01246 |
| DEFENDANT: | BANKUNITED NA |
| DATE: | December 19, 2025 |
| USPS Certified Mail ID: | 9202992267700103406920 |

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

December 11, 2025

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

December 11, 2025

We are enclosing the return receipt confirming receipt of summons.

COR : 000001 of 000002

DOCUMENT
Filed 25-CI-01246 12/19/2025 Taunya Nolan Jack, Campbell Circuit Clerk
03:39:33 PM
91970

UNITED STATES POSTAL SERVICE

December 19, 2025

Dear Secretary Of State Commonwealth of Kentucky:

The following is in response to your request for proof of delivery on your item with the tracking number: **9202 9922 6770 0103 4069 20**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered, Individual Picked Up at Postal Facility |
| **Status Date / Time:** | December 19, 2025, 9:08 am |
| **Location:** | HIALEAH, FL 33016 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Recipient Signature

Signature of Recipient:

Address of Recipient:




Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

COR : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025
03:45:52 PM
91970

Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Campbell County
Campbell County Courthouse
330 York Street, Room #8
Newport, KY 41071

FROM: SUMMONS DIVISION
SECRETARY OF STATE

RE: CASE NO: 25-CI-01246

DEFENDANT: BANKUNITED NA

DATE: December 20, 2025

USPS Certified Mail ID: 9202992267700103406906

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

December 11, 2025

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

December 11, 2025

We are enclosing the return receipt confirming receipt of summons.

COR : 000001 of 000002

UNITED STATES POSTAL SERVICE

December 20, 2025

Dear Secretary Of State Commonwealth of Kentucky:

The following is in response to your request for proof of delivery on your item with the tracking number: **9202 9922 6770 0103 4069 06**.

## Item Details

| | |
|---|---|
| **Status:** | Delivered to Agent, Picked up at USPS |
| **Status Date / Time:** | December 20, 2025, 8:14 am |
| **Location:** | HIALEAH, FL 33016 |
| **Postal Product:** | Priority Mail® |
| **Extra Services:** | Certified Mail™ |
| | Return Receipt |
| | Return Receipt Electronic |
| | Up to $100 insurance included |

## Recipient Signature

| | |
|---|---|
| Signature of Recipient: (Authorized Agent) | [illegible] |
| Address of Recipient: | 1487 [illegible] |

Note: Scanned image may reflect a different destination address due to Intended Recipient's delivery instructions on file.

Thank you for selecting the United States Postal Service® for your mailing needs. If you require additional assistance, please contact your local Post Office™ or a Postal representative at 1-800-222-1811.

Sincerely,
United States Postal Service®
475 L'Enfant Plaza SW
Washington, D.C. 20260-0004

COR : 000002 of 000002

Filed 25-CI-01246 12/24/2025 Taunya Nolan Jack, Campbell Circuit Clerk

UNITED STATES POSTAL SERVICE

NOT ORIGINAL DOCUMENT 12/30/2025 03:45:05 PM 91970

Date Produced: 12/24/2025

The following is the delivery information for Certified Mail™/RRE/RD item number 9236 0901 9403 8345 8326 16. Our records indicate that this item was delivered on 12/23/2025 at 10:58 a.m. in FRANKFORT, KY 40601. The scanned image of the recipient information is provided below.

Signature of Recipient :



Address of Recipient :



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT KY 40601

COR : 000001 of 000002

Customer Reference Number: C6413220.39109576

Filed 25-CI-01246 12/24/2025 Taunya Nolan Jack, Campbell Circuit Clerk

Filed 25-CI-01246 12/24/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2025 03:45:05 PM
91970

USPS MAIL PIECE TRACKING NUMBER: 420406019236090194038345832616
MAILING DATE: 12/08/2025
DELIVERED DATE: 12/23/2025
Custom 1: DriverId-12262345
Custom 2: PartyId-79637744
Custom 3: SummonsNum-@00000245418
Custom 4: CentralMailId-270088
Custom 5: Source County-CAMPBELL

MAIL PIECE DELIVERY INFORMATION:

CORPORATION SERVICE COMPANY
421 WEST MAIN STREET
FRANKFORT KY 40601

MAIL PIECE TRACKING EVENTS:

| | | |
|---|---|---|
| 12/08/2025 15:03 | PRE-SHIPMENT INFO SENT USPS AWAITS ITEM | FRANKFORT,KY 40601 |
| 12/08/2025 15:59 | SHIPMENT RECEIVED ACCEPTANCE PENDING | FRANKFORT,KY 40601 |
| 12/10/2025 19:48 | ORIGIN ACCEPTANCE | FRANKFORT,KY 40601 |
| 12/10/2025 21:03 | PROCESSED THROUGH USPS FACILITY | LOUISVILLE,KY 40221 |
| 12/11/2025 20:42 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 12/12/2025 11:57 | FORWARDED | FRANKFORT,KY 40601 |
| 12/18/2025 06:55 | FORWARD PROCESSED | INDIANAPOLIS,IN 46241 |
| 12/18/2025 18:50 | PROCESSED THROUGH USPS FACILITY | INDIANAPOLIS IN DISTRIBUTION CE 46206 |
| 12/19/2025 15:36 | PROCESSED THROUGH USPS FACILITY | LOUISVILLE,KY 40221 |
| 12/20/2025 22:35 | PROCESSED THROUGH USPS FACILITY | LEXINGTON KY DISTRIBUTION CENTE 40511 |
| 12/23/2025 10:58 | DELIVERED LEFT WITH INDIVIDUAL | FRANKFORT,KY 40601 |

COR : 000002 of 000002

Filed 25-CI-01246 12/24/2025 Taunya Nolan Jack, Campbell Circuit Clerk

NOT ORIGINAL DOCUMENT
12/30/2025 03:48:11 PM
91970

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**DIVISION II**
**CASE NO. 25-CI-01246**

| | |
|---|---|
| **FIRST AMERICAN TITLE INSURANCE COMPANY** | : |
| | : |
| **Plaintiff** | : |
| **v.** | : |
| | : |
| **REGIONS BANK, ET AL.** | : |
| | : |
| **Defendants** | : |

---

**STIPULATED EXTENSION OF TIME TO ANSWER OR OTHERWISE RESPOND TO COMPLAINT**

---

Plaintiff and Defendant, BankUnited N.A., by their respective undersigned counsel, hereby stipulate that Defendant BankUnited N.A. shall have up to and including January 31, 2025 to answer or otherwise respond to Plaintiff's Complaint.

**So Stipulated.**

*/s/ C. Richard Colvin*, per email approval on 12.30.2025
Hon. C. Richard Colvin
Hon. Stephen S. Schmidt
STRAUSS TROY CO., LPA
50 E. RiverCenter Blvd., Suite 200
Covington, KY 41011
crcolvin@strausstroy.com
ssschmidt@strausstroy.com
(513) 621-8900
*Attorneys for Plaintiff*

*/s/ Susan M. Argo*________________
Susan M. Argo (KBA# 86725)
Austin Z. Baurichter (KBA #101523)
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
sargo@bricker.com
abaurichter@bricker.com
(513) 629-2716
*Attorneys for Defendant BankUnited N.A.*

MIS : 000001 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:48:11 PM
91970

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon the following parties via regular U.S. mail, postage prepaid, this 30th day of December, 2025.

Regions Bank
1900 Fifth Avenue North
Birmingham, AL 35203

*/s/ Susan M. Argo*_________________
Susan M. Argo (KBA# 86725)

MIS : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:49:13 PM
91970

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**DIVISION II**
**CASE NO. 25-CI-01246**

**FIRST AMERICAN TITLE INSURANCE COMPANY** :

**Plaintiff** :

**v.** :

**REGIONS BANK, ET AL.** :

**Defendants** :

---

**NOTICE OF APPEARANCE OF COUNSEL**

---

Now comes attorney Susan M. Argo and Bricker Graydon LLP and provides this notice of appearance in this case as counsel for Defendant BankUnited, N.A. Please direct all pleadings and correspondence to:

Susan M. Argo
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
sargo@bricker.com
(513) 629-2716.

Respectfully submitted,

*/s/ Susan M. Argo*________________
Susan M. Argo (KBA# 86725)
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
sargo@bricker.com
(513) 629-2716
*Attorney for Defendant BankUnited, N.A.*

NO : 000001 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:49:13 PM
91970

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon the following parties via regular U.S. mail, postage prepaid, this 30th day of December, 2025.

Hon. C. Richard Colvin
Hon. Stephen S. Schmidt
Strauss Troy Co., LPA
50 E. RiverCenter Blvd., Ste. 200
Covington, KY 41011
crcolvin@strausstroy.com
ssschmidt@strausstroy.com
*Counsel for Plaintiff*

Regions Bank
1900 Fifth Avenue North
Birmingham, AL 35203

*/s/ Susan M. Argo*_________________
Susan M. Argo (KBA# 86725)

NO : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:50:53 PM
91970

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**DIVISION II**
**CASE NO. 25-CI-01246**

| | |
|---|---|
| **FIRST AMERICAN TITLE INSURANCE COMPANY** | : |
| | : |
| **Plaintiff** | : |
| **v.** | : |
| | : |
| **REGIONS BANK, ET AL.** | : |
| | : |
| **Defendants** | : |

---

**NOTICE OF APPEARANCE OF CO-COUNSEL**

---

Now comes attorney Austin Z. Baurichter and Bricker Graydon LLP and provides this notice of appearance in this case as co-counsel for Defendant BankUnited, N.A. Please direct all pleadings and correspondence to:

Austin Z. Baurichter
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
abaurichter@bricker.com
(513) 629-2731.

Respectfully submitted,

*/s/ Austin Z. Baurichter*____________
Austin Z. Baurichter (KBA #101523)
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
abaurichter@bricker.com
(513) 629-2731
*Attorney for Defendant BankUnited, N.A.*

NO : 000001 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:50:53 PM
91970

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon the following parties via regular U.S. mail, postage prepaid, this 30th day of December, 2025.

Hon. C. Richard Colvin
Hon. Stephen S. Schmidt
Strauss Troy Co., LPA
50 E. RiverCenter Blvd., Ste. 200
Covington, KY 41011
crcolvin@strausstroy.com
ssschmidt@strausstroy.com
*Counsel for Plaintiff*

Regions Bank
1900 Fifth Avenue North
Birmingham, AL 35203

*/s/ Austin Z. Baurichter*___________
Austin Z. Baurichter (KBA #101523)

NO : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:49:48 PM
91970

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**DIVISION II**
**CASE NO. 25-CI-01246**

| | |
|---|---|
| **FIRST AMERICAN TITLE INSURANCE COMPANY** | : |
| | : |
| **Plaintiff** | : |
| **v.** | : |
| | : |
| **REGIONS BANK, ET AL.** | : |
| | : |
| **Defendants** | : |

**NOTICE OF ELECTION OF ELECTRONIC SERVICE**

Pursuant to CR 5.02, Susan M. Argo with the law firm of Bricker Graydon LLP, counsel for Defendant BankUnited, N.A., provides notice of her election to effectuate and receive service via electronic means in this action. Service upon the undersigned counsel may be made at: sargo@bricker.com.

Respectfully submitted,

*/s/ Susan M. Argo*_________________
Susan M. Argo (KBA# 86725)
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
sargo@bricker.com
(513) 629-2716
*Attorney for Defendant BankUnited, N.A.*

NO : 000001 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:49:48 PM
91970

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon the following parties via regular U.S. mail, postage prepaid, this 30th day of December, 2025.

Hon. C. Richard Colvin
Hon. Stephen S. Schmidt
Strauss Troy Co., LPA
50 E. RiverCenter Blvd., Ste. 200
Covington, KY 41011
crcolvin@strausstroy.com
ssschmidt@strausstroy.com
*Counsel for Plaintiff*

Regions Bank
1900 Fifth Avenue North
Birmingham, AL 35203

*/s/ Susan M. Argo*_________________
Susan M. Argo (KBA# 86725)

NO : 000002 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:51:18 PM
91970

**COMMONWEALTH OF KENTUCKY**
**CAMPBELL CIRCUIT COURT**
**DIVISION II**
**CASE NO. 25-CI-01246**

| | |
|---|---|
| **FIRST AMERICAN TITLE INSURANCE COMPANY** | : |
| | : |
| **Plaintiff** | : |
| **v.** | : |
| | : |
| **REGIONS BANK, ET AL.** | : |
| | : |
| **Defendants** | : |

---

**NOTICE OF ELECTION OF ELECTRONIC SERVICE**

---

Pursuant to CR 5.02, Austin Z. Baurichter with the law firm of Bricker Graydon LLP, counsel for Defendant BankUnited, N.A., provides notice of his election to effectuate and receive service via electronic means in this action. Service upon the undersigned counsel may be made at: abaurichter@bricker.com.

Respectfully submitted,

*<u>/s/ Austin Z. Baurichter</u>*____________
Austin Z. Baurichter (KBA #101523)
BRICKER GRAYDON LLP
909 Wright's Summit Pkwy, Suite 300
Fort Wright, KY 41011
abaurichter@bricker.com
(513) 629-2731
*Attorney for Defendant BankUnited, N.A.*

NO : 000001 of 000002

NOT ORIGINAL DOCUMENT
12/30/2025 03:51:18 PM
91970

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon the following parties via regular U.S. mail, postage prepaid, this 30th day of December, 2025.

Hon. C. Richard Colvin
Hon. Stephen S. Schmidt
Strauss Troy Co., LPA
50 E. RiverCenter Blvd., Ste. 200
Covington, KY 41011
crcolvin@strausstroy.com
ssschmidt@strausstroy.com
*Counsel for Plaintiff*

Regions Bank
1900 Fifth Avenue North
Birmingham, AL 35203

*/s/ Austin Z. Baurichter*___________
Austin Z. Baurichter (KBA #101523)

NO : 000002 of 000002