**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

| | | |
|---|---|---|
| **FIRST AMERICAN TITLE INSURANCE COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**REGIONS BANK and BANKUNITED NA,**<br><br>**Defendants.** | : | **Case No.: 2:26-cv-00019-DLB-CJS**<br><br>**Judge David L. Bunning** |

## FIRST AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 15(a)(2), and upon all opposing parties' written consent to amend per the previously filed Stipulation, Plaintiff First American Title Insurance Company ("First American" or "Plaintiff") hereby states as follows for its First Amended Complaint against Defendants Regions Bank ("Regions") and BankUnited NA ("BankUnited") (each a "Defendant" and at times collectively "Defendants"):

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff First American is a title insurance company operating and registered to do business in the Commonwealth of Kentucky. Plaintiff was incorporated in California, has its principal place of business located in Santa Ana, California, and was re-domesticated to the state of Nebraska in 2014. It is a citizen of Nebraska and California.

2. Defendant Regions is a state-chartered, FDIC-insured bank organized in Alabama and operating and registered to do business in the Commonwealth of Kentucky, with a principal place of business located at 1900 Fifth Avenue North, Birmingham, AL

35203, and multiple physical business locations throughout the state of Kentucky. Regions is an Alabama citizen.

3. Defendant BankUnited is a national banking association with a principal place of business located at 7825 NW 148th St., Miami Lakes, FL 33016-1554, and conducts business in the Commonwealth of Kentucky, and whose involvement herein arises from its participation in a transaction concerning the sale of real property located in Campbell County, Kentucky. BankUnited is a Florida citizen pursuant to 28 U.S.C. § 1348.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based upon complete diversity of citizenship of the parties to this action and because the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. Personal jurisdiction over Regions is proper in this action, including without limitation pursuant to KRS 454.210, because among other things Regions has physical business locations in the Commonwealth of Kentucky, transacts business in Kentucky, supplies services in Kentucky, and caused tortious injury in Kentucky by its acts and omissions as alleged in this First Amended Complaint. Exercising personal jurisdiction over Regions here comports with the Kentucky and United States Constitutions.

6. Personal jurisdiction over BankUnited is proper in this action, including without limitation pursuant to KRS 454.210, because among other things, and on information and belief, BankUnited provided services and derives substantial revenue from services rendered in the Commonwealth of Kentucky, which services include, relate to, and affected real property located in Kentucky and give rise to the allegations in this First Amended Complaint. BankUnited further caused tortious injury in Kentucky by its acts and omissions as alleged in this First Amended Complaint. Exercising personal

jurisdiction over BankUnited here comports with the Kentucky and United States Constitutions.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims in this First Amended Complaint occurred in Campbell County, Kentucky, within the Eastern District of Kentucky, these claims arise out of Defendants' contacts with and involvement in a real estate transaction in Alexandria, Kentucky, and such tortious acts were in connection with real property specifically located in Campbell County, Kentucky, and resulting in a prior foreclosure action in Campbell Circuit Court, all within this judicial District.

## FACTS

### The Legacy Settlement Services Transaction

8. On or about November 23, 2022, as part of a residential real estate closing conducted by Legacy Settlement Services, LLC ("Legacy"), it wired approximately $356,986.89 (the "Legacy Funds") from BankUnited to Regions, which were intended as the payoff for a mortgage lien held by a lender on the property that was the subject of the closing, and were wired by Legacy for that purpose.

9. As the result of the actions of a fraudulent third-party actor who misdirected the Legacy Funds to the actor's account instead of to the true lender's account, the Legacy Funds were wired to a personal checking account at Regions in the name of "James R Ready" ending in digits ******8515 (the "Ready Account").

10. The Legacy Funds were wired from a BankUnited account.

11. Defendants' own documentation establishes Legacy's wiring of the Legacy Funds from BankUnited and their subsequent deposit into the Ready Account at Regions.

12. On information and belief, Legacy reported to BankUnited that it had fallen victim to fraud and that the funds should not have been wired to the Ready Account.

13. On information and belief, on or about December 21, 2022, BankUnited sent a fraud wire recall to Regions for the Legacy Funds.

14. On or about January 9, 2023, Regions opened a fraud investigation into the Ready Account, following notification from BankUnited that the $356,986.89 deposit of Legacy Funds into the Ready Account was fraudulent.

15. Regions' own internal investigation report shows that once the Ready Account received the wire of the Legacy Funds in the amount of $356,986.89, the fraudulent actor very shortly thereafter, on or about November 28 and 29, 2022, issued several cashier's checks from the Ready Account to various unknown persons associated with the fraudulent actor, which totaled approximately $349,550.00.

16. Regions' documentation of the Ready Account shows that the Ready Account had a balance less than $500.00 as of December 15, 2022.

**The American Homeland Title Agency Transaction**

17. Plaintiff incorporates all preceding allegations as if fully restated herein.

18. Unrelated to the Legacy transaction, on or about December 16, 2022, another real estate closing occurred involving funds transferred from BankUnited to Regions, this time through a settlement agent by the name of American Homeland Title Agency ("Homeland").

19. The Homeland closing related to the sale of the real property known as 701 Brant Ct., Alexandria, KY 41001, in Campbell County (the "Property").

20. Both BankUnited and Regions were aware that this transaction involved the

Property.

21. At the time of the Homeland transaction, Village Capital & Investment LLC ("Village Capital") held a note payable by the then-owners of the Property, James and Catherine Saunders (the "Note"), which Note was secured by a first mortgage on the Property, recorded in the Campbell County, Kentucky records at Book M1070, Page 93 (the "Mortgage"). A copy of the Note, redacted as applicable, is attached as Exhibit 1, and a copy of the Mortgage, redacted as applicable, is attached as Exhibit 2.

22. Kody and Samantha Jarrells bought the Property from James and Catherine Saunders in the Homeland transaction and financed it with a mortgage in favor of American Pacific Mortgage Corporation ("American Pacific").

23. First American insured the validity and priority of the American Pacific mortgage against the Property by underwriting a policy of title insurance issued to American Pacific, as its insured.

24. As a part of the Homeland transaction and the Jarrells' purchase of the Property, at closing, the Village Capital Note was to be paid off and the Mortgage released.

25. The Homeland transaction settlement statement explicitly listed a $249,999.09 payoff balance payable to Village Capital in order to satisfy the Note and cause the Mortgage to be released.

26. On or about December 16, 2022, Homeland wired $249,999.09 which was the amount advanced by American Pacific which was necessary to satisfy the Village Capital Note/Mortgage balance (the "Homeland Funds").

27. However, just as had happened with the weeks-earlier, unrelated Legacy

transaction, a fraudulent third-party actor provided fraudulent wire information to Homeland which in turn caused Homeland to wire the Homeland Funds to the Ready Account.

28. The Homeland Funds were routed from BankUnited to the Ready Account at Regions.

29. As a result of this fraud, the Homeland Funds which were intended to pay off the Note and Mortgage held by Village Capital never made it to the intended recipient and, as a result, the Village Capital Mortgage remained on the Property because it was never actually satisfied.

30. Defendants are aware of and have documentation establishing Homeland's wiring of the Homeland Funds from BankUnited and the subsequent deposit in the Ready Account at Regions.

31. As a direct and immediate result of the Homeland Funds wire transfer, the Ready Account on December 16, 2022, immediately after the wiring of the Homeland Funds contained $250,470.78 (consisting of $486.69 Legacy Funds and $249,999.09 Homeland Funds).

32. The Ready Account had contained less than $500.00 prior to the Homeland Funds transfer into the account on December 16, 2022.

33. On December 16, 2022, essentially all Legacy Funds were no longer in the Ready Account.

34. Accordingly, as of December 16, 2022, essentially all funds contained in the Ready Account were the very same identifiable, traceable Homeland Funds that had been advanced by American Pacific (Plaintiff's insured), wired by settlement/escrow agent

Homeland, and earmarked as the Village Capital Note/Mortgage payoff.

**BankUnited's Homeland Funds Fraud Wire Recall**

35. Plaintiff incorporates all preceding allegations as if fully restated herein.

36. On or about January 4, 2023, internal Regions emails demonstrate its actual knowledge that there had been a business email compromise ("BEC") resulting in two large-dollar wires that it received, *i.e.*, the Legacy Funds and the Homeland Funds.

37. On or about January 11, 2023, BankUnited sent Regions a fraud wire recall for the Homeland Funds.

38. On or about January 12, 2023, Regions responded to BankUnited's fraud wire recall for the Homeland Funds and informed it that the Homeland Funds were on hold, and that Regions required an indemnity agreement in order to return them.

39. BankUnited had previously executed an indemnity agreement in favor of Regions at or around the time of the prior wire fraud recall for the Legacy Funds.

40. On information and belief, BankUnited never provided the indemnity agreement to Regions for the Homeland Funds and did not respond to the request.

**Defendants' Wiring of the Homeland Funds to Legacy**

41. As evidenced by Regions' internal fraud investigation, it had knowledge in January 2023, at the very latest, that as of November 30, 2022, substantially all of the Legacy Funds already had been drained from the Ready Account *prior to* the deposit of the Homeland Funds in the Ready Account on or about December 16, 2022.

42. Regions' internal account documentation for the Ready Account confirms that, for the period of November 30, 2022, through January 13, 2023, the starting account balance for the Ready Account was less than $500.00, and the ending balance was more

than $250,000.00, with the sole deposit into the Ready Account during that period being the Homeland Funds wire transfer in the amount of $249,999.09.

43. The Homeland Funds thus represented substantially all the funds in the Ready Account as of January 13, 2023.

44. Both Regions and BankUnited had actual knowledge as of at least January 12, 2023, that the Homeland Funds had been sent to the Ready Account at Regions and were specifically being held and frozen there.

45. Regions knew as of at least January 12, 2023, that substantially all these funds then-contained in the Ready Account were the Homeland Funds.

46. The Homeland Funds held in the Ready Account were directly traceable, identifiable, and expressly earmarked to payoff off the Note and Mortgage with Village Capital.

47. Nonetheless, on February 8, 2023, Regions wire-transferred just over $250,000.00 then-contained in the Ready Account—namely, the entire $249,999.09 in earmarked Homeland Funds—to BankUnited with the comment that it was returning all available funds from the original amount of the Legacy Funds.

48. These returned funds were the identifiable Homeland Funds, and not the Legacy Funds, as Regions definitively knew.

49. Further, at the time that the funds were returned by Regions to BankUnited, BankUnited also knew of the existence of the fraud relating to the Homeland Funds.

50. BankUnited subsequently returned the Homeland Funds to Legacy, despite BankUnited's knowledge that both Homeland and Legacy (both its clients/customers) had been victims of the same scheme.

51. BankUnited did not return, or attempt to return, the Homeland Funds either to Homeland (as settlement agent for that transaction) or to American Pacific, the party to whom the Homeland Funds belonged.

52. This knowledge was evidenced by the fact that BankUnited had voluntarily undertaken to initiate fraud wire recalls and attempt to recover the stolen money on both Homeland's and Legacy's behalf.

53. BankUnited was further aware that Regions had specifically frozen the entire amount of the Homeland Funds and was holding them in response to the wire recall.

54. BankUnited was aware that the returned amount on February 8 essentially matched the amount of the frozen Homeland Funds.

55. BankUnited did not follow up on the status of the Homeland Funds' freeze after being advised that Regions was holding the funds.

56. BankUnited did not provide the requested indemnity agreement to Regions for the Homeland Funds despite doing so for Legacy.

57. On or about February 10, 2023, Regions informed BankUnited that there were no funds remaining to return in response to the second fraud wire recall from BankUnited (for the Homeland Funds), and thus it was unable to comply with that request.

58. Neither BankUnited nor Regions ever informed Homeland, or anyone involved in the transaction concerning the Property, about the identification of the Homeland Funds that had been routed to Regions from BankUnited, that they had been identified, frozen, and held there, that the Homeland Funds were subsequently returned to BankUnited and then returned to Legacy instead, or that Regions and BankUnited both knew that the Homeland Funds never reached Village Capital to pay off the Note/Mortgage as intended

and as explicitly stated in the BankUnited wire instructions to Regions on December 16, 2022.

59. BankUnited returned the Homeland Funds to Legacy instead of returning said funds to Homeland or to American Pacific so that they could be used to properly satisfy the Note of Village Capital.

**The Foreclosure Litigation**

60. Plaintiff incorporates all preceding allegations as if fully restated herein.

61. When the Note and Mortgage went unpaid, Village Capital initiated a foreclosure action related to the Property styled as *Village Capital & Investment LLC v. James D. Saunders, et al.*, Campbell Circuit Court, Division I, No. 23-CI-00306 (the "Foreclosure Litigation").

62. Homeland ultimately became a third-party defendant in the Foreclosure Litigation.

63. During the pendency of the Foreclosure Litigation, Village Capital assigned its rights with respect to the Property, including all rights to collect upon the Mortgage-secured Note, to Planet Home Lending, LLC ("Planet"), who was subsequently substituted as the plaintiff in the Foreclosure Litigation.

64. A claim was made by American Pacific on the First American title policy as a result of the Planet claim of priority over the American Pacific mortgage.

65. On or about April 2025, the parties to the Foreclosure Litigation settled and dismissed that case, with First American ultimately paying $276,460.80 to Planet on its Note/Mortgage in order to preserve the first priority lien position of the First-American-insured American Pacific mortgage on the Property.

66. First American bore and compensated for the harm and liability exposure otherwise borne by the defendants and third-party defendants in the Foreclosure Litigation, including Homeland and American Pacific.

67. In addition, First American through its policy is subrogated to the rights and interests of its insured, American Pacific. Specifically, First American bore all expenses and losses associated with the Foreclosure Litigation on behalf of its insured, American Pacific, in order to assure first priority position of American Pacific's mortgage and provide for its defense in the Foreclosure Litigation and as such First American is the sole real party in interest as to its asserted claims in this First Amended Complaint.

68. A true and accurate copy of the insurance policy under which First American insured the American Pacific mortgage and obtained these rights is attached here as Exhibit 3.

69. A true and accurate copy of the payment made by First American, pursuant to this policy and in satisfaction of the Foreclosure Litigation liability, is attached (redacted as appropriate) as Exhibit 4.

70. In total, in resolving the Foreclosure Litigation First American has suffered damages exceeding $400,000, which include legal fees and costs as well as the payoff to Planet.

71. But for the Defendants' conduct resulting in the loss of the Homeland Funds (by providing them to Legacy) First American would not have suffered such damages.

## FIRST AND SECOND CLAIMS FOR RELIEF
**Negligent Recovery and Negligence**
**(Against BankUnited)**

72. Plaintiff incorporates all preceding allegations as if fully restated herein.

73. BankUnited owed a general duty of at least ordinary care to its client/customer, Homeland, who was using BankUnited for purposes of the Homeland Transaction to wire the Village Capital Note/Mortgage payoff related to the Property.

74. BankUnited knew of the existence of this duty.

75. In addition, BankUnited owed a duty of at least ordinary care to Homeland and all participants of the Homeland Transaction by virtue of its fraud wire recall for the Homeland Funds and the voluntary efforts BankUnited undertook to recover them for Homeland and all Homeland Transaction participants as part of the Homeland Transaction.

76. Under Kentucky law, a party is required to exercise at least ordinary, reasonable care in carrying out voluntarily undertaken efforts on behalf of another, here, BankUnited's client/customer Homeland and the participants of the Homeland Transaction.

77. BankUnited knew of the existence of this duty.

78. BankUnited actually recovered the Homeland Funds.

79. BankUnited negligently breached its duty of ordinary care to Homeland (one client/customer) and to the participants of the Homeland Transaction by providing the Homeland Funds, which BankUnited had in its possession, to Legacy (another client/customer) rather than Homeland.

80. BankUnited knew or should have known that these were the Homeland Funds and not the Legacy Funds at the time BankUnited provided them to Legacy rather than Homeland.

81. BankUnited negligently breached this voluntarily undertaken duty.

82. Further, BankUnited, also breached its duty to Homeland as client/customer and the participants of the Homeland Transaction, by failing to follow-up or respond to Regions' alert that it actually had the Homeland Funds held and frozen, by failing to provide the requested indemnity (despite doing so for Legacy) or attempting to obtain the Homeland Funds that it knew Regions had frozen, and by not further inquiring into Regions' inaccurate comment that it was returning the remainder of the Legacy Funds despite all of the known facts at the time indicating otherwise.

83. In addition, BankUnited owed a duty of at least ordinary care to the participants of the Homeland Transaction in which BankUnited was involved as the wire-originating bank, as it was foreseeable that such participants, including American Pacific and First American as its insurer, could be harmed by BankUnited's negligence in its failure to properly assist in the recovery and return of the Homeland Funds once such duty was undertaken.

84. It was reasonably foreseeable from BankUnited's perspective that the Homeland Transaction purchaser's mortgagee would be harmed where the seller's prior mortgage goes unpaid or is otherwise affected by BankUnited's failure to properly return the Homeland Funds to Homeland so that the Homeland Transaction could be properly completed.

85. BankUnited negligently breached this duty to Homeland as well as all Homeland Transaction participants, including American Pacific and the Plaintiff, by its actions as described in this First Amended Complaint, and, further, through its actions it materially increased the risk and harm to Homeland and to all participants in the Homeland Transaction by failing to inform anyone in that transaction about these events,

and allowing everyone to learn about them through the Foreclosure Litigation.

86. Plaintiff, American Pacific, Homeland, and others in the Foreclosure Litigation did not learn of these events or have opportunity to discover them until the Foreclosure Litigation was filed and the interested parties obtained through that action and legal process a subpoena response from Regions containing internal communications and wire records.

87. BankUnited has breached the aforementioned duties by virtue of the described negligent actions, including but not limited to the negligent return of the Homeland Funds to Legacy.

88. As a direct and proximate result of the above-described negligence and negligent recovery efforts of BankUnited, First American has directly suffered injury and damages in excess of the jurisdictional minimum, in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**Negligent Recovery**
**(Against Regions)**

89. Plaintiff incorporates all preceding allegations as if fully restated herein.

90. After BankUnited's fraud wire recall for the Homeland Funds, Regions also voluntarily undertook efforts to recover the Homeland Funds on Homeland's behalf, creating a duty to exercise at least ordinary care by Regions in those efforts.

91. In addition to its duty to Homeland, Regions owed a duty of at least ordinary care to the participants of the Homeland Transaction, including American Pacific and First American as its insurer, after it became aware of the BEC and the fact that it was in possession of the Homeland Funds which had been diverted to its bank by a fraudulent actor.

92. It was foreseeable that such participants, including American Pacific and First American as its insurer, could be harmed by Region's negligence in its failure to properly assist in the recovery and proper return of the Homeland Funds.

93. Regions negligently breached this voluntarily undertaken duty of ordinary care in delaying things by requiring an indemnity agreement, rather than returning to BankUnited the funds that Regions knew were part of the Homeland Transaction to be returned to Homeland, and by failing to follow-up on that request for an indemnity agreement given that it knew it was holding the frozen, fraudulently taken Homeland Funds.

94. Regions further negligently breached its duty of care under these circumstances by inaccurately stating to BankUnited that it was returning the approximately $250,000 of Legacy Funds, when in reality Regions was aware that it was actually returning the Homeland Funds.

95. The Homeland Funds were readily identifiable in the Ready Account.

96. In voluntarily undertaking these efforts by Regions, Regions also materially increased the risk to Homeland and the Homeland Transaction participants, including American Pacific and the Plaintiff, by freezing these funds and then providing them to BankUnited along with incorrect information about their source, which further impeded Homeland's ability to discover and recover the Homeland Funds.

97. Regions also acted negligently and materially increased the risk to Homeland and the Homeland Participants by failing to inform them of these events, which were learned in the Foreclosure Litigation.

98. As a direct and proximate result of the above-described negligent recovery

efforts of Regions, First American has suffered injury and damages in excess of the jurisdictional minimum, in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
**Common Law Indemnity**
**(Against All Defendants)**

99. Plaintiff incorporates all preceding allegations as if fully restated herein.

100. Kentucky recognizes common law indemnity where one party has suffered exposure to liability because of the wrongful act of another party or parties with whom the first party is not equally at fault.

101. Based upon the title insurance policy issued by First American insuring the priority of the American Pacific mortgage, First American under said policy became liable contractually to satisfy the Village Capital Note/Mortgage.

102. First American is subrogated to the rights of its insured, American Pacific who also was exposed to liability through no fault of its own as a result of the wrongful acts of both Regions and BankUnited.

103. Had the Defendants properly handled and returned the Homeland Funds to Homeland, the Village Capital Note/Mortgage would have been satisfied and American Pacific would not have lost its lien priority and First American would not have sustained a loss under its policy of title insurance.

104. Ultimately First American paid the debts associated with the mishandled Homeland Funds, which loss was directly caused by the negligence and negligent recovery efforts of Regions and BankUnited, individually and in combination.

105. In so doing, First American ultimately bore responsibility for compensating the plaintiff in the Foreclosure Litigation and relieving the defendants and third-party

defendants therein, including Homeland and American Pacific, of liability for same, thereby compensating them.

106. Nether First American (nor its insured American Pacific) bore any culpability or fault in the loss, other than the liability as the insurer for the American Pacific mortgage, which was triggered entirely by Defendants' wrongful acts in negligently mishandling the Homeland Funds and negligently assisting in their recovery.

107. There is no contractual indemnity agreement between First American and Defendants.

108. There is no contractual indemnity agreement between American Pacific and Defendants.

109. As a direct and proximate result of the negligent acts of the Defendants, Plaintiff became obligated to fulfill its legal duty to resolve the debts associated with the Homeland Funds in the Foreclosure Litigation and to indemnify and compensate all such parties for same, despite the fact that such loss was created solely by Defendants' negligence.

110. Plaintiff has suffered injury and damages in excess of the jurisdictional minimum, in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
**Conversion**
**(Against All Defendants)**

111. Plaintiff incorporates all preceding allegations as if fully restated herein.

112. The Homeland Funds belonged to American Pacific (Plaintiff's insured) at the time of Defendants' conversion, and American Pacific at all relevant times had title to the Homeland Funds, which it wired through settlement/escrow agent Homeland and

which ultimately were converted by Defendants in this case.

113. Plaintiff owns and has title and right to recover these funds through subrogation under its policy that insured American Pacific, as Plaintiff fully indemnified and made whole American Pacific for the harm alleged in this First Amended Complaint.

114. Plaintiff therefore owns and has legal title to the Homeland Funds.

115. American Pacific had the right to possess the Homeland Funds at the times of Defendants' conversion of the Homeland Funds, which right Plaintiff First American has obtained through subrogation under its policy insuring American Pacific. *See* Ex. 3.

116. Defendant Regions exercised dominion and control over the Homeland Funds in a manner that denied American Pacific (and therefore Plaintiff) the rights to use and enjoy such Homeland Funds, and which was instead to Regions' own use and beneficial enjoyment, by affirmatively choosing to provide, and providing (without the owner's consent), the Homeland Funds in Regions' possession to non-owner BankUnited with direction to return them to non-owner Legacy, rather than to owner American Pacific, its settlement/escrow agent Homeland, or its insurer Plaintiff (even after and despite BankUnited's second fraud wire recall for American Pacific's Homeland Funds).

117. Defendant BankUnited exercised dominion and control over the Homeland Funds in a manner that denied American Pacific (and therefore Plaintiff) the rights to use and enjoy such Homeland Funds, and which was instead to BankUnited's own use and beneficial enjoyment, by affirmatively choosing to provide, and by providing (without the owner's consent), the Homeland Funds to non-owner Legacy after receiving them from Regions, rather than to owner American Pacific, its settlement/escrow agent Homeland, or its insurer Plaintiff (even after and despite BankUnited's second fraud wire recall for

American Pacific's Homeland Funds).

118. Regions intended to take the act(s) which resulted in it exercising such dominion and control over the Homeland Funds, thereby interfering with Plaintiff's possession of the Homeland Funds.

119. BankUnited intended to take the act(s) which resulted in it exercising such dominion and control over the Homeland Funds, thereby interfering with Plaintiff's possession of the Homeland Funds.

120. The Homeland Funds wired by owner American Pacific, and through BankUnited and settlement/escrow agent Homeland, were traceably earmarked, intended, and necessary to pay off the prior mortgage (held by Village Capital/Planet) in order to assure first priority position of the American Pacific mortgage insured by Plaintiff.

121. Demand for the return of the Homeland Funds by Plaintiff, Homeland, or American Pacific would have been futile because both Defendants' takings were wrongful from the outset.

122. Neither Defendant had the right or permission to control the Homeland Funds in the manner(s) and for the purpose(s) for which each Defendant controlled the Homeland Funds at the time of their conversion.

123. In any event, and in the alternative, Plaintiff demanded return of the Homeland Funds from both Defendants by letter to Regions and BankUnited dated October 30, 2025.

124. Neither Regions nor BankUnited has returned the converted property to its rightful owner.

125. As a direct and proximate result of each Defendant's conversion of the

Homeland Funds, Plaintiff has been harmed in an amount to be proven at trial and exceeding the jurisdictional minimum.

126. Each Defendant's conversion of the Homeland Funds was, individually and jointly and severally, the legal cause of American Pacific's (and thereby Plaintiff's, as subrogated to the rights of its insured) loss, as described in this First Amended Complaint.

127. Plaintiff fully indemnified and made whole American Pacific for its loss of the Homeland Funds and for all of its costs and expenses of the Foreclosure Litigation, and Plaintiff thereby obtained all rights and abilities to pursue and recover these amounts from Defendants through subrogation under its policy.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff First American prays for judgment and relief as follows:

a. For judgment in Plaintiff's favor and against all Defendants as to all claims for relief asserted herein, with relief in the alternative where appropriate;

b. For an award of compensatory damages, and any other damages as appropriate, in an amount sufficient to make Plaintiff whole, jointly and severally as applicable;

c. For attorneys' fees, costs, and pre- and post-judgment interest; and

d. For any and all other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Stephen S. Schmidt
Stephen S. Schmidt (KBA #95063)
STRAUSS TROY CO., LPA
150 East Fourth St., 4th Floor
Cincinnati, OH 45202-4018
Telephone: (513) 621-2120
Facsimile: (513) 241-8259
E-mail: ssschmidt@strausstroy.com

C. Richard Colvin (KBA #86067)
STRAUSS TROY CO., LPA
50 E. RiverCenter Blvd, Suite 200
Covington, KY 41011
Telephone: (513) 621-8900
Facsimile: (513) 241-8259
E-mail: crcolvin@strausstroy.com

*Attorneys for Plaintiff First American Title Insurance Company*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed electronically with the U.S. District Court January 29, 2026. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. If a party is not given notice electronically through the Court’s system a copy will be served by U.S. Mail.

/s/ Stephen S. Schmidt
Stephen S. Schmidt (KBA #95063)