**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-19-DLB-CJS**

**FIRST AMERICAN TITLE INSURANCE COMPANY** **PLAINTIFF**

**v.** **MEMORANDUM OPINION AND ORDER**

**REGIONS BANK and BANKUNITED, N.A.** **DEFENDANTS**

*** *** *** *** *** ***

This matter is before the Court upon Defendants BankUnited, N.A. ("BankUnited") and Regions Bank's ("Regions") Motion to Dismiss (Doc. # 12). Plaintiff First American Title Insurance Company ("First American") having filed its Response (Doc. # 15), and Defendants having filed their Reply (Doc. # 16), the matter is ripe for the Court's review. For the following reasons, Defendants' Motion to Dismiss (Doc. # 12) is **granted**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff amended its complaint on January 29, 2026, and its first Amended Complaint (Doc. # 10) is now the operative pleading in this matter. According to the first Amended Complaint, this case arises out of wire transfers from two separate real estate closings.

On or about November 23, 2022, Legacy Settlement Services, LLC ("Legacy") wired approximately $356,986.89 (the "Legacy Funds") from BankUnited to Regions. (Doc. # 10 ¶ 8). These funds were intended as the payoff for a mortgage lien held by a lender on a piece of property subject to a closing conducted by Legacy. (*Id.*). However, a fraudulent third-party actor misdirected the Legacy Funds from the true lender's account

to the third-party actor's account. (*Id.* ¶ 9). As a result, the Legacy Funds were wired to a personal checking account at Regions in the name of "James R. Ready" (the "Ready Account"). (*Id.*). Legacy then reported to BankUnited that it had been the victim of fraud, and that the Ready Account was not the intended destination of the Legacy Funds. (*Id.* ¶ 12). On December 21, 2022, BankUnited sent a wire fraud recall to Regions for the Legacy Funds. (*Id.* ¶ 13). On January 9, 2023, Regions opened a fraud investigation into the Ready Account. (*Id.* ¶ 14). The fraud investigation revealed that soon after the Legacy Funds were deposited into the Ready Account, the fraudulent actor issued several cashier's checks totaling around $349,550.00. (*Id.* ¶ 15).

On December 16, 2022, another real estate transaction occurred which was unrelated to the Legacy transaction. (*Id.* ¶ 18). There, settlement agent American Homeland Title Agency ("Homeland") was involved in the closing of a property in Alexandria, Kentucky (the "Property"). (*Id.* ¶ 19). At the time of the closing, Village Capital & Investment LLC ("Village Capital") held a note (the "Note") payable by the then-owners of the property, James and Catherine Saunders. (*Id.* ¶ 21). This note was secured by a first mortgage on the property. (*Id.*). The purchasers of the property, Kody and Samantha Jarrell, financed the purchase with a mortgage in favor of American Pacific Mortgage Corporation ("American Pacific"). (*Id.* ¶ 22). Plaintiff First American then insured the validity and priority of the American Pacific mortgage against the property by underwriting a policy of title insurance issued to American Pacific. (*Id.* ¶ 23). Pursuant to the Homeland transaction settlement statement, a $249,999.09 payoff balance payable to Village Capital was to be issued to satisfy the note and cause the first mortgage to be released. (*Id.* ¶¶ 24-25).

On December 16, 2022, Homeland wired the $249,999.09 payoff (the "Homeland Funds") from BankUnited to Regions. (*Id.* ¶¶ 26, 28). However, a fraudulent third-party actor provided fraudulent wire information to Homeland, causing Homeland to wire the funds from BankUnited to the Ready Account at Regions. (*Id.* ¶¶ 27-28). On January 11, 2023, BankUnited sent Regions a wire fraud recall for the Homeland Funds. (*Id.* ¶ 37). On January 12, 2023, Regions informed BankUnited that the Homeland Funds were on hold, and that Regions required an indemnity agreement to return them. (*Id.* ¶ 38). BankUnited never responded to the indemnity agreement request for the Homeland Funds. (*Id.* ¶ 40). On February 8, 2023, Regions wire-transferred just over $250,000.00 to BankUnited. (*Id.* ¶ 44). Regions informed BankUnited that it was returning all available funds from the original amount of the Legacy Funds, and thus upon receipt, BankUnited returned this money to Legacy. (*Id.* ¶¶ 47, 50). On February 10, 2023, Regions informed BankUnited that it was unable to comply with the request for funds in the second fraud wire recall because there were no funds remaining in the Ready Account. (*Id.* ¶ 58).

Because the Homeland Funds were wired to the Ready Account instead of the intended destination, the note and first mortgage in the Homeland transaction went unpaid. (*Id.* ¶ 61). As a result, Village Capital initiated a foreclosure action related to the Property. (*Id.*). Village Capital assigned its rights to the Property to Planet Home Lending, LLC ("Planet") who was substituted as the plaintiff in the foreclosure litigation. (*Id.* ¶ 63). Because Planet had claim of priority over the American Pacific mortgage, a claim was made by American Pacific on the First American title policy. (*Id.* ¶ 64). Around April 2025, the parties settled the foreclosure case, with First American paying $276,460.80 to Planet

for the Note/First Mortgage to preserve the first priority lien position on the First American insured American Pacific mortgage on the Property. (*Id*. ¶ 65).

On December 25, 2025, First American filed this action against Regions and BankUnited in Campbell Circuit Court alleging negligent recovery, negligence, and common law indemnity claims. (Doc. # 1-2). On January 16, 2026, Defendant Regions removed the case to this Court (Doc. # 1). On January 29, 2026, Plaintiff filed its first Amended Complaint (Doc. # 10). On February 12, 2026, Defendants filed a Joint Motion to Dismiss the Amended Complaint (Doc. # 12). Plaintiff having filed its Response (Doc. # 15), and Defendants having filed their Reply (Doc. # 16), the matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. Under that rule, a court is called to assess whether the plaintiff has "'state[d] a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint does not have to show that liability is probable, but the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). If a reasonable court "can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied." *Keys v. Humana, Inc.* 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

In adjudicating a motion to dismiss, a court should accept the plaintiff's allegations as true, and then determine whether the plaintiff has pled sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To give rise to such a reasonable inference, the complaint must contain factual allegations that speak to all of a claim's material elements "under some viable legal theory." *Eidson v. State of Tenn. Dep't. of Children's Serv's.*, 510 F.3d 631, 634 (6th Cir. 2007). Merely stating the elements of a claim is insufficient; while "legal conclusions can provide the framework of the complaint, they must be supported by factual allegations." *Ashcroft*, 556 U.S. at 678-79. These factual allegations, "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original). In short, a claim cannot survive a motion to dismiss if the plaintiff has not pled sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim. *Eidson,* 510 F.3d at 634.

## III. ANALYSIS

Plaintiff's first Amended Complaint alleges: (1) negligent recovery against BankUnited; (2) negligence against BankUnited; (3) negligent recovery against Regions; (4) common law indemnity against both BankUnited and Regions; and (5) conversion against both BankUnited and Regions. (Doc. # 10 at 11-17). In Defendants' Joint Motion to Dismiss the Amended Complaint, they argue that all claims must be dismissed because the claimed damages result from payments by wire transfer and are therefore displaced by Kentucky's Uniform Commercial Code ("UCC"). (Doc. # 12 at 1). Specifically,

Defendants assert that "[b]ecause Plaintiff has failed to assert any claim under Kentucky's applicable UCC provisions and [its] common law claims are plainly preempted by the General Assembly's adoption of the Uniform Commercial Code Article 4A, they should be dismissed." (*Id*. at 2).[1] In Response, Plaintiff asserts that its claims are not preempted by Kentucky's UCC because (1) it was not a party to the funds transfer, and (2) its claims arise outside of the UCC funds-transfer loop. (Doc. # 15 at 1).

**A. Party to the transfer**

Plaintiff first argues that its claims are not preempted by Kentucky's UCC because "First American and its insured were not a party of the 'funds transfer' process." (Doc. # 15 at 5). Article 4A is "intended to be the exclusive means of determining the rights, duties, and liabilities *of the affected parties* in any situation covered by particular provisions of the Article." *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1275 (11th Cir. 2003) (emphasis omitted) (emphasis added) (internal quotations omitted) (quoting U.C.C. § 4A-102 cmt.).

Here, Plaintiff certainly was a party affected by the wire fraud scheme. Indeed, Plaintiff goes to great lengths in its Complaint to reiterate that it has been financially impacted by Regions and BankUnited's alleged actions. (*See* Doc. # 1 ¶ 88 ("As a direct and proximate result of the above-described negligence and negligent recovery efforts of BankUnited, First American has directly suffered injury and damages in excess of the jurisdictional minimum[.]"); *Id*. ¶ 109 ("As a direct and proximate result of the negligent acts of the Defendants, Plaintiff became obligated to fulfill its legal duty to resolve the debts associated . . ."); *Id*. ¶ 113 ("Plaintiff owns and has title and right to recover these

[1] In the alternative, Defendants argue that Plaintiff's claims must be barred as untimely or dismissed as a matter of law. (Doc. # 12 at 11-16).

funds.[]"); *Id.* ¶ 126 ("Each Defendant's conversion of the Homeland Funds was, individual and jointly and severally, the legal cause of American Pacific's (and thereby Plaintiff's as subrogated to the rights of its insured) loss[.]"); *Id.* ¶ 127 ("Plaintiff fully indemnified and made whole American pacific for its loss of the Homeland Funds and for all of its costs and expenses . . . and Plaintiff thereby obtained all rights and abilities to pursue and recover these amounts from Defendants through subrogation under is policy.")).

In *Hunter v. Citibank, N.A.*, the plaintiff made the exact same argument, claiming that because "Article 4A only establishes the duties and liabilities of the parties to a funds transfer . . . its provisions do not apply to Plaintiffs who are third parties[.]" No. C09-02079, 2010 WL 2509933, at *6 (N.D. Cal. Feb. 3, 2010). The *Hunter* court however, concluded that "[b]y defining the respective duties and liabilities of the parties to the transaction . . . Article 4A will inherently also affect the rights of third parties to bring suit based on claims arising out of the transaction." *Id.* The Court additionally reasoned that

> "Article 4A encourages quick and inexpensive wire transfers . . . by setting out a definite set of requirements for banks to adhere to when engaging in such wire transfers. Subjecting banks to liability to third parties in spite of their adherence to the provisions of Article 4A would severely undermine the important policy goals underlying its enactment."

*Id.* The Court finds the *Hunter* court's reasoning persuasive. Accordingly, Article 4A applies to Plaintiff based on its claims, which it alleges arose as a result of the Homeland transaction.

**B. Preemption**

Because the Court has concluded that Article 4A applies to Plaintiff, it must now determine if its claims are preempted by Article 4A of Kentucky's UCC.

Electronic funds transfers are governed by Article 4A of the UCC. *See Pirata P.S.C. v. Bank of America, N.A.*, 709 F. Supp. 3d. 353, 358 (W.D. Ky. 2024) ("Kentucky's Uniform Commercial Code governs this area of financial transactions."). Relevant here is KRS 355.4A, which governs funds transfers. *See* KRS 355.4A-104(1) ("'Funds transfer' means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.").

As a court in this district recently explained, common law causes of action relating to misconduct during the funds transfer process are preempted by the statutory scheme:

> "[R]esort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in [the] Article." § 355.4A-102 cmt.; *see also Wright v. Citizen's Bank of East Tenn.*, 640 F. App'x 401, 406 (6th Cir. 2016) ("Article 4A displaces common-law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A or attempt to create rights, duties, or liabilities inconsistent with Article 4A."). "[T]he critical inquiry is whether [the Article's] provisions protect against the type of underlying injury or misconduct alleged in a claim." *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 80-90 (2d Cir. 2010).

*Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A.*, 649 F. Supp. 3d 459, 463-64 (E.D. Ky. 2023). For the UCC to preempt common law, an "explicit statement to that effect each time it occurs" is not required. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 506 (Ky. 2014). "Rather, 'the UCC should also be understood to intend the displacement of the common law whenever both the code and the common law would provide a means of recovery for the same loss.'" *Id.* (quoting

*Clancy Sys. Int'l Inc. v. Salazar*, 177 P.3d 1235, 1237 (Colo. 2008)). With the Kentucky Supreme Court's preemption analysis in mind, "the question then becomes whether the UCC provides a remedy for bank customers who have suffered a loss resulting from wire transfers and are unable to recover those funds." *Northcutt & Son Home for Funerals, Inc. v. U.S. Bank Nat'l Ass'n.*, 747 F. Supp. 3d 1058, 1061 (E.D. Ky. 2024). In answering this question, the *Cosmopolitan* case is instructive.

There, a real estate buyer provided the plaintiff, Cosmopolitan Title Agency ("Cosmopolitan"), with a $70,000 cashier's check, which the plaintiff deposited into its escrow account with J.P. Morgan Chase Bank, N.A. ("Chase"). *Cosmopolitan*, 649 F. Supp. 3d at 461. Cosmopolitan then wired part of that amount from Chase to PNC Bank, N.A. ("PNC"). *Id.* However, Cosmopolitan quickly realized it had been defrauded, so it called PNC and submitted a wire transfer recall. *Id.* PNC told Cosmopolitan that Chase would need to file a dispute directly with PNC; however, Chase never filed a dispute. *Id.* As a result, the alleged fraudster—into whose account the money had been deposited—was able to withdraw the funds. *Id.* Days later, Chase sent a wire recall to PNC, which PNC rejected due to insufficient funds. *Id.* Cosmopolitan proceeded to file suit against Chase and PNC alleging, among other things, "conversion, negligence, negligence *per se* for receiving stolen property, and punitive damages." *Id.* at 462. Cosmopolitan's common law claims were based on the "alleged[] mishandling [of] the payment-order cancelation or later failing to return the funds." *Id.* at 464. The court concluded that the common-law claims were preempted because they were "based on the wire transfer itself" and the "only alleged harm [was] that [Cosmopolitan] was unable to recover the

transferred funds, which is an injury covered by Article 4A." *Id.* (citing KRS § 355.4A-211) (internal quotations omitted).

The facts of *Cosmopolitan* are similar to those currently before this Court. Here, Homeland wired funds from BankUnited to Regions. (Doc. # 1 ¶¶ 26, 28). However, due to a fraudulent third-party actor who provided fraudulent wire information to Homeland, the funds were not wired to the intended destination. (*Id.* ¶¶ 27-28). Soon after, Bank United sent Regions a fraud wire recall, and Regions informed BankUnited that the funds were on hold, but it required an indemnity agreement to return them. (*Id.* ¶ 38). BankUnited never responded to the indemnity agreement request. (*Id.* ¶ 40). Eventually, Regions returned funds to BankUnited, but informed BankUnited that those were Legacy Funds. (*Id.* ¶¶ 44, 47, and 50). Regions then informed BankUnited that it was unable to comply with the wire fraud recall due to insufficient funds. (*Id.* ¶ 58). Plaintiff then sued for negligence, negligent recovery, indemnity, and conversion. (*Id.* at 11-20).

The facts here are strikingly similar to those in *Cosmopolitan*. Both plaintiffs were victims of fraud who were unable to recover funds due to the beneficiary's bank informing the originator's bank that there were insufficient funds to recover. (*See generally id.*); *Cosmopolitan*, 649 F. Supp. 3d at 461. Moreover, the plaintiff in *Cosmopolitan* sought to hold PNC liable for "allegedly mishandling the payment-order cancelation or later failing to return the funds." *Id.* at 464. So too here. Specifically, Plaintiff states, among other things, that BankUnited failed to "follow-up or respond to Regions' alert that it actually had the Homeland Funds held and frozen" while it alleges that Regions acted negligently because it "delay[ed] things by requiring an indemnity agreement . . . and by failing to follow-up on that request for an indemnity agreement." (Doc. # 1 ¶¶ 82, 93). It also

argues that it suffered a financial loss as a direct and proximate result of Defendants failing to return the funds. (*Id*. at 11-20).

The Court in *Dean* noted that "[a] majority of jurisdictions decide UCC-displacement questions with the 'comprehensive rights and remedies test' . . . . Under that rule, 'where the Code provides a comprehensive remedy for the parties to a transaction, a common law action will be barred.'" 434 S.W.3d at 505 (quoting Melissa Waite, Note, *Check Fraud and the Common Law: At the Intersection of Negligence and the Uniform Commercial Code*, 54 B.C.L.Rev. 2205, 228 (2013) then *Sebastian v. D & S Exp., Incl*., 61 F. Supp. 2d 386, 291 (D.N.J. 1999)). The *Cosmopolitan* court noted that the plaintiff's "only alleged harm" was that it was "unable to recover the transferred funds[.]" 649 F. Supp. 3d at 464. The court reasoned that because the only alleged harm was the inability to recover transferred funds, the common law claims were "based on the wire transfer itself." *Id*. Cosmopolitan explicitly concluded that mishandling a payment-order cancelation or failing to return funds are "matters [that] fall within Article 4A's provisions" and thus the alleged injury was "an injury covered by Article 4A." *Id*.; *see also McLaughlin v. Comerica Bank*, No. 21-12661, 2022 WL 16040109, at *6 (E.D. Mich. Apr. 18, 2022) (concluding that a common-law claim seeking to impose liability for not having cancelled a fraudulent transfer fell within Article 4A.).

Plaintiff argues that its claims are not preempted. The Court disagrees. Plaintiff's claims are based on BankUnited and Regions allegedly not handling the cancel order properly or then later failing to return funds. Therefore, its only alleged harm is the damage caused when the funds were never returned. Courts have repeatedly concluded that the UCC provides a remedy for such a claim. *See Northcutt*, 747 F. Supp. 3d at 1062

("Because the UCC provides a remedy for plaintiffs who are unable to recover funds which were transferred via wire transfer, the common law is preempted by the UCC." (citing *Cosmopolitan*, 649 F. Supp. 3d at 464)); *Title, Inc. v. U.S. Bancorp*, 744 F. Supp. 3d 785, 793 (E.D. Mich. 2024) ("Courts in this district have found that common law and statutory conversion claims are preempted by Article 4A because imposing liability on a receiving bank for declining to agree to cancel a funds transfer is inconsistent with Article 4A"); *Kirschner v. Wells Fargo Bank*, No. 21-10785, 2021 WL 5545957, at *3 (E.D. Mich. July 19, 2021) ("The essence of Plaintiffs' claims against Wells Fargo is that it refused to cancel or refund the transfer, which it was not required to do under Article 4A."); *see also* KRS 355.4A-211 ("Unless otherwise provided in an agreement of the parties or in a funds-transfer system rule, if the receiving bank, after accepting a payment order, agrees to cancellation or amendment of the order by the sender or is bound by a funds-transfer system rule allowing cancellation or amendment without the bank's agreement, the sender, whether or not cancellation or amendment is effective, is liable to the bank for any loss and expenses, including reasonable attorney's fees, incurred by the bank as a result of the cancellation or amendment or attempted cancellation or amendment.").[2]

Accordingly, Plaintiff's common law claims are displaced by Article 4A because the Article addresses Plaintiff's underlying injury.

[2] Plaintiff urges this Court to follow *Pirata*, a case from the Western District of Kentucky that held that some of the Plaintiff's claims were not preempted by the UCC because they occurred outside the funds transfer process. 709 F. Supp. 3d at 360. The Court has reviewed *Pirata*; however, the case is merely persuasive. The Court finds *Cosmopolitan*, an Eastern District of Kentucky case, to be more factually aligned with the facts in this case and therefore declines to follow *Pirata*.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendants Regions Bank and Bank United N.A.'s Joint Motion to Dismiss Amended Complaint (Doc. # 12) **GRANTED**;

(2) This matter is **STRICKEN** from the Court's docket; and

(3) A **Judgment** in favor of **Defendants** will be entered contemporaneously herewith;

This 21st day of August, 2026.

**Signed By:**
***David L. Bunning***
**Chief United States District Judge**

G:\Judge-DLB\DATA\ORDERS\Cov2026\26-19 MOO MTD.docx